CATALINA, APPELLANT, *v.* CRAWFORD ET AL., APPELLEES.

(No. 83AP-202—Decided June 28, 1984.)

*Robert D. Holmes,* for appellant.
*Gregory S. Lashutka,* city attorney, and *Donald R. Keller,* for appellees.

MOYER, J. This case is before us on the appeal of plaintiff-appellant, Elenor M. Catalina, from a judgment of the Franklin County Court of Common Pleas sustaining a motion for a directed verdict filed by defendants-appellees, Dale A. Crawford and Larry H. Robinson, at the close of plaintiff's case.

Plaintiff, who had worked for the Columbus Civil Service Commission ("commission") since 1956, was employed as a Personnel Analyst III at the time of the events in question. On Friday, September 29, 1978, the Executive Secretary of the commission, defendant Crawford, called plaintiff into his office, expressed dissatisfaction with her work and with her ability to get along with her fellow employees, and told plaintiff to leave the premises. He told plaintiff to decide whether she wished to take vacation leave to consult with an attorney and apparently indicated that, if she returned to work on Monday, disciplinary proceedings would be filed against her.

Although plaintiff claims she never voluntarily took vacation leave, she did not return to work. Crawford sent plaintiff's attorney a letter detailing the conditions under which plaintiff could return to work. The conditions included an apology to defendant Robinson, a voluntary demotion, retraining, and a psychological or psychiatric examination.

On February 13, 1979, plaintiff filed a complaint in the court of common pleas alleging she had been wrongfully excluded from her employment.

On February 14, 1979, the commission served written charges upon plaintiff. Plaintiff was discharged on May 31, 1979, as a result of these charges.

The court of common pleas affirmed the commission's decision discharging plaintiff and this court affirmed that judgment in *Catalina* v. *Schoonover* (Apr. 9, 1981), Franklin App. No. 80AP-392, unreported.

Following this court's judgment in case No. 80AP-392, the court of common pleas sustained defendants' motion for summary judgment in plaintiff's pending case for improper exclusion from employment. The court of common pleas apparently held that our decision in case No. 80AP-392, the discharge case, was *res judicata* regarding plaintiff's improper exclusion claims.

The trial court's judgment was appealed to this court and, in *Catalina* v. *Crawford* (Oct. 22, 1981), Franklin App. No. 81AP-412, unreported, we held that our decision in *Catalina* v. *Schoonover, supra,* dealt only with the issue of whether plaintiff's discharge was lawful; it did not deal with plaintiff's argument that she was improperly excluded from her employment before being discharged. We remanded the case for the trial court to consider whether plaintiff had been improperly excluded from her employment between September 29, 1978 and February 14, 1979.

On remand, the trial court granted defendants' motion for a directed verdict at the close of plaintiff's case, holding that, although plaintiff's complaint named defendants individually and did not name the commission, reasonable minds could only conclude that defendants were acting within the scope of their official duties, and were not liable to plaintiff as individuals.

Plaintiff has now appealed that judgment, asserting the following three assignments of error:

"1. The trial court erred in holding that authorization of the Columbus

Municipal Civil Service Commission to defendants to exclude Mrs. Catalina from her tenured civil service work and pay precluded their being held responsible in damages where such exclusion was done without written charges and timely hearing required by the Columbus City Charter and Rule XIII E & F of the Rules of The Columbus Municipal Civil Service Commission.

"2. The court erred in limiting the period for recovery of lost wages to September 29, 1978 through February 13, 1979.

"3. The court erred in the exclusion of evidence."

In support of her first assignment of error, plaintiff argues that the trial court erred in refusing to determine whether plaintiff was illegally excluded from the premises without written charges between September 29, 1978 and February 14, 1979. The trial court refused to consider this issue because it found that defendants' acts were authorized and approved by the commission. The trial court explained that, even if plaintiff had been illegally set off the premises, plaintiff had been excluded by the commission, not by the individual defendants, and, since the commission was not made a party to plaintiff's lawsuit, the issue of illegal exclusion could not be decided in this case.

Thus, this appeal involves only the four-and-one-half months preceding plaintiff's discharge and the only issues presented are whether plaintiff was wrongfully excluded from her place of employment and, if so, whether defendants are individually liable to plaintiff.

Regardless of whether defendants wrongfully excluded plaintiff from her place of employment, defendants are not liable to plaintiff if, as the trial court found, they are protected by the doctrine of official immunity.

Judges and legislators have long enjoyed immunity from suits which are brought due to acts done or words spoken by the judges or legislators in their judicial or legislative capacity. See *Scheuer* v. *Rhodes* (1974), 416 U.S. 232, 240-241. Although the commission and its employees are members of the executive branch of the government, the doctrine of official immunity was extended to the executive branch of the federal government as early as 1896. See *Spalding* v. *Vilas* (1896), 161 U.S. 483, 498.

The Ohio Supreme Court recently restated the law in the following words:

"Generally, as to the civil liability of a public officer for acts and functions carried out while in office, it is well settled that a public officer acting within the scope of his authority is not liable individually, in the absence of bad faith or a corrupt motive, for failure properly to perform a duty involving judgment and discretion. * * *" *Scot Lad Foods* v. *Secy. of State* (1981), 66 Ohio St. 2d 1, 8 [20 O.O.3d 1].[1]

"* * * The rationale underlying the doctrine of official immunity reflects a concern for the efficient operation of government. The apprehension of liability for damages in a civil suit would 'cripple the proper and effective administration of public affairs.'" Note, Official Immunity in Ohio: How to Sue the King's Men (1974), 43 Cin. L. Rev. 557, 558, quoting *Spalding* v. *Vilas, supra,* at 498.

As the United States Supreme Court reiterated, " 'it is not a tort for government to govern.'" *Scheuer* v. *Rhodes, supra,* at 241, quoting *Dalehite* v. *United States* (1953), 346 U.S. 15, 57 (Jackson, J., dissenting).

One criticism of the doctrine of official immunity has been that, if the state or its political subdivision is not liable due to the doctrine of sovereign immunity, and the government official is not liable due to the doctrine of official

_____

[1] R.C. 9.86 codifies official immunity for officers and employees of the state.

immunity, a plaintiff's wrong goes unredressed if the plaintiff has been injured by a governmental body or by a government official when it would be redressed if the plaintiff were injured by a private company or by a private individual. See Davis, Administrative Officers' Tort Liability (1956), 55 Mich. L. Rev. 201, 232. Since the doctrine of sovereign immunity has been largely abolished in Ohio (see, e.g., Haverlack v. Portage Homes, Inc. [1982], 2 Ohio St. 3d 26, paragraph two of the syllabus; Zents v. Bd. of Commrs. [1984], 9 Ohio St. 3d 204; Section 16, Article I, Ohio Constitution; R.C. 2743.02), this is no longer a valid criticism.

The doctrine of official immunity is not without limits. The target of the lawsuit must be a public official rather than a public employee, the acts complained of must be discretionary acts, the acts must not exceed the official's jurisdiction, and the official must act without bad faith or a corrupt motive in order to be protected by official immunity.[2]

The first and second requirements, that the public official be an official rather than an employee, and that the acts involve discretion, are interrelated. A public official is one who exercises some of the sovereign powers of the state in performing his job duties. Baird v. Hosmer (1976), 46 Ohio St. 2d 273, 277 [75 O.O.2d 323].

"* * * It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted * * * which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity * * *." Barr v. Matteo (1959), 360 U.S. 564, 573-574.

Thus, the doctrine protects not only department heads, but any official whose job involves the exercise of the sovereign powers of the state. Both defendants qualify as officials under this definition. They were apparently first and second in command, following the three members of the commission, entrusted with applying, interpreting, and enforcing the civil service laws and policies in the city of Columbus.

Furthermore, both of their actions, in regard to this case, involved discretionary acts.

"* * * Ministerial acts are those performed 'in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of * * * judgment upon the authority of the act being done.' Discretionary acts, on the other hand, 'involve the investigation of a state of facts, an act of choice or discretion or judgment as to the propriety of the action to be taken in reference to the facts thus ascertained.' " Note, Official Immunity in Ohio: How to Sue the King's Men, supra, at 564. (Footnotes omitted.)

The defendants clearly exercised judgment and discretion in determining that plaintiff's work performance and ability to relate to her co-workers were no longer acceptable and in determining what the appropriate response to these problems should be.[3]

Regarding the third requirement, one commentator has noted that the

---

[2] The requirement that the acts be undertaken in good faith and without malice appears to apply to actions tried in the Ohio courts (see Scot Lad Foods v. Secy. of State, supra; Neiswender v. Edinger [1978], 59 Ohio App. 2d 25 [13 O.O.3d 96]; White v. Moody [Aug. 30, 1983], Franklin App. No. 82AP-327, unreported), but it may not apply to actions tried in the federal courts. See Note, Official Immunity in Ohio: How to Sue the King's Men, supra, at 562, fn. 42.

[3] A determination of whether defendants' response was appropriate is not pertinent to this discussion; the only issue is whether defendants exercised discretion.

most common method of avoiding application of the doctrine of official immunity is to prove that the officials exceeded their jurisdiction to act — that their acts exceeded their authority. Davis, Administrative Officers' Tort Liability, *supra,* at 222. In this case, Dr. Thelma Schoonover, the President of the commission, testified that all of the actions taken by defendants with respect to plaintiff between September 29, 1978 and February 14, 1979 were taken with the commission's knowledge and approval. Her testimony was not refuted.

The United States Supreme Court has stated that the distinction must be made between "matters which are manifestly or palpably beyond [the official's] * * * authority, and action having more or less connection with the general matters committed by law to [the officer's] * * * control or supervision." *Spalding* v. *Vilas, supra,* at 498. Clearly, the evaluation of an employee's work habits and the response to an unsatisfactory evaluation were connected with the general matters committed by law to defendants' supervision.

Finally, in regard to the fourth requirement, the absence of bad faith or a corrupt motive, bad faith is defined as follows:

"* * * [B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Slater* v. *Motorists Mutual Ins. Co.* (1962), 174 Ohio St. 148 [21 O.O.2d 420], paragraph two of the syllabus.

Plaintiff alleges that defendants, *inter alia,* sought to preclude plaintiff from contributing information regarding job classifications to a meeting of the commission, erratically switched plaintiff's work assignments, assigned disproportionate amounts of work to plaintiff, and stepped up completion dates arbitrarily. The supervision of plaintiff's work assignments was clearly the responsibility of her supervisors (defendants). Plaintiff has not proven these allegations and she has not shown that assignments were made "erratically" or "arbitrarily."

In addition, plaintiff alleges that defendant Robinson threatened plaintiff with "dire consequences" and asked plaintiff whether she wished to engage in a "pissing contest." While these statements may not demonstrate good judgment, they fall short of meeting the definition of bad faith or a corrupt motive.

Plaintiff alleges that defendant Crawford, *inter alia,* ordered plaintiff to leave the premises, implied that plaintiff was mentally ill, accused plaintiff of being antisocial in the office, and criticized plaintiff's ability to perform her work. All of these actions allegedly occurred during the September 29, 1978 meeting in Crawford's office. The evidence reveals a discussion concerning Crawford's perception of the reasons plaintiff's job performance was deemed to be substandard. It does not reveal that Crawford's comments were made for the purpose of embarrassing or humiliating plaintiff or with "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Slater* v. *Motorists Mutual Ins. Co., supra,* paragraph two of the syllabus. A supervisor's critique of an employee's job performance which does not meet the *Slater* definition of bad faith cannot be the basis of an employee's claim for damages. Otherwise, employers would not be free to inform an employee of the reasons for the employer's dissatisfaction with the employee's job perform-

ance. Once again we note that the issue is not whether plaintiff was properly discharged from her job.[4] The issue is whether defendants are liable to plaintiff for excluding her from her place of employment as a result of the above-detailed actions.

Our review of the testimony of plaintiff, Crawford and Robinson causes us to conclude that, while there were strong differences of opinion regarding plaintiff's skills and work assignments and while there are references to alleged statements made by all three parties that were not conducive to an efficient working relationship, plaintiff's evidence is not sufficient to permit reasonable minds to reach different conclusions on the issue of whether Crawford and Robinson acted in bad faith or with a corrupt motive. See *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215 [58 O.O.2d 424].

The trial court did not err in finding the defendants were protected from liability to plaintiff by the doctrine of official immunity. Plaintiff's first assignment of error is overruled. * * *[5]

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, J., concurs.

WHITESIDE, J., concurs separately.

WHITESIDE, J., concurring. Since the trial court directed a verdict in a jury trial, the test to be applied is not whether the weight of plaintiff's evidence is sufficient to justify a verdict in her favor, but, rather, as provided by Civ. R. 50(A)(4), the test is whether reasonable minds could reach different conclusions upon the evidence when construed most strongly in favor of plaintiff. If the determinative issue herein were the presence or absence of bad faith, reasonable minds could reach different conclusions upon the evidence construed most strongly in favor of plaintiff.

However, a supervisory employee who maliciously induces the suspension of a civil service employee is not liable for such malicious conduct. *Anderson* v. *Minter* (1972), 32 Ohio St. 2d 207 [61 O.O.2d 447]. The Ohio Supreme Court by the second paragraph of the syllabus of *Anderson* extended absolute, not qualified, immunity to a supervisory employee who interferes with the employment of a civil service employee under his supervision so long as the act complained of is within the scope of the supervisor's duties.

Here, Crawford and Robinson were plaintiff's supervisors and acted within the scope of their duties as supervisors. Under the rule of *Anderson*, they are not liable to plaintiff for their actions, even if they acted maliciously and in bad faith.

Accordingly, I concur in the judgment.

---

[4] For this reason, two cases cited by plaintiff involving the removal of civil service employees without notice and a hearing, *Zimbelman* v. *Atkinson* (1948), 54 Ohio Law Abs. 47; *Rowley* v. *Ferguson* (1942), 37 Ohio Law Abs. 531, are distinguishable.

Furthermore, *Anderson* v. *Minter* (1972), 32 Ohio St. 2d 207 [61 O.O.2d 447], dealing with the employee's right to seek review under R.C. 143.27 of a suspension for five days or less, is inapplicable to the present case.

[5] Reporter's Note: The text of the opinion as it appears herein was abridged by Judge Moyer.