**STATE ex rel. John TWIEHAUS, Relator,**

v.

**Honorable George A. ADOLF, Judge, Circuit Court, City of St. Louis, Respondent.**

No. 67323.

Supreme Court of Missouri, En Banc.

March 25, 1986.

William L. Webster, Atty. Gen., Ruth A. Przybeck, Asst. Atty. Gen., St. Louis, for relator.

David R. Swimmer, Barbara Blee Maille, St. Louis, for respondent.

ROBERTSON, Judge.

This is an action in prohibition. Relator seeks to prohibit respondent trial judge from proceeding further in the underlying tort suit against him, under the doctrine of official immunity. We issued our provisional rule, and now make that rule absolute.

### I.

Relator is the superintendent of the St. Louis Developmental Disabilities Treatment Center, a state facility operating within the Department of Mental Health. The underlying action seeks to recover damages from relator, among others, for the wrongful death of a patient in that facility. Plaintiffs are the parents of the patient-decedent.

According to the amended petition, plaintiffs' decedent was killed when he jumped or fell from the window of his room in the facility. The basis for relator's liability is asserted in three counts. The first count alleges that relator was negligent in failing to do some or all of the following: to secure the window, to inspect and repair the window, to isolate decedent from the window, to warn decedent of its condition, or to follow existing "standards of monitoring facility maintenance and housekeeping services in such a way as to result in capital improvements necessary for patient safety." The basis for negligence under this count, taken in the light most favorable to plaintiffs, is that plaintiffs' decedent suffered from depression, aggressive behavior and mild retardation, and had a history of self-destructive behavior; that the metal bars and other restraints on the window of decedent's room had rusted and

decayed; and, that relator was aware of both decedent's mental condition and the condition of the window. The first count also alleges that relator's conduct was reckless, grossly negligent, and in callous disregard for his duty to correct defects and provide a safe and secure environment.

The second count alleges that relator was negligent, grossly negligent and reckless in the hiring and orientation of employees and in the establishment, implementation or monitoring of written policies of patient surveillance and protection. The third count alleges that relator was negligent, grossly negligent and reckless in failing, in his supervisory capacity, to effect reasonable medical treatment of decedent's injuries.

Relator moved to dismiss the amended petition or, in the alternative, for summary judgment. The trial court denied relator's motion. In such circumstances, where it appears on the face of the pleadings that defendant is immune from suit as a matter of law, prohibition is an appropriate remedy. *State ex rel. Missouri Department of Agriculture v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985).

### II.

The general rule of official immunity is that

public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity.

*Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. banc 1985).

Plaintiffs, on behalf of respondent, urge that relator breached a ministerial duty by failing to report the dangerous condition of the window to the Department of Mental Health, thus pretermitting capital improvements which may have prevented decedent's wrongful death. They contend that this duty is imposed on relator by operation of § 630.040.2, RSMo Cum.Supp. 1984. That section provides:

2. The chief administrative officer of each facility shall keep the records and make the reports which the [D]epartment [of Mental Health] and the respective division deem necessary and advisable.

*Id.* Plaintiffs further hypothesize that the described report was required by the department. Notwithstanding the merits of such an hypothesis, plaintiffs' amended petition does not aver the existence of either a statutory or departmentally-mandated duty, nor does the petition allege the breach of such a duty.[1] Absent these allegations, the pleadings are insufficient to state a claim which is not barred by the doctrine of official immunity as a matter of law.

█ Assuming, *arguendo*, that plaintiffs' petition can be read to plead a violation of a ministerial duty to make reports to the department on the condition of the facility imposed by § 630.040.2, no cause of action would have been stated. Any duty imposed by that statute runs in favor of the state as an entity and not toward individual patients or any other members of the public.

According to plaintiffs' hypothesis, the department requires relator to report on the condition of his facility, to the end that the department and ultimately state government can take steps to ensure future capital improvements. To the extent relator is permitted to exercise his discretion in making such reports (just as in performing other aspects of his maintenance function), the duty to exercise that discretion properly is one owed to his patient-charges.[2] However, to the extent his discretion is eliminated and he is under a statutorily-sanctioned mandate to report specified conditions, relator's duty is one of compliance with the directives of his superiors and extends only to the department and the state as a whole.

Generally,

[t]he public duty doctrine recognizes that the duties of public officers are normally owed only to the general public and that a breach of such a duty will not support a cause of action by an individual injured thereby.

*Bailey v. Town of Forks,* 38 Wash.App. 656, 688 P.2d 526, 529 (1984); *see also State v. Superior Court of Maricopa County,* 123 Ariz. 324, 599 P.2d 777, 785 (banc 1979) (ordinarily no individual cause of action based on breach of duty by public official). More specifically, "a public official is liable to an individual for his failure to perform a ministerial duty imposed on him by statute only if the statute creates a duty to the individual." *Nelson v. Freeman,* 537 F.Supp. 602, 608 (W.D.Mo.1982), aff'd *sub. nom. Nelson v. Missouri Division of Family Services,* 706 F.2d 276 (8th Cir.1983), *quoting Leger v. Kelley,* 142 Conn. 585, 116 A.2d 429, 431 (1955).

In this regard, it is commonly stated that where the law imposes on the officer the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest, the officer is liable to such individual for any injury which he may proximately sustain in consequence of the failure to perform the duty at all, or to perform it properly.

*Oyler v. State,* 618 P.2d 1042, 1050 (Wyo. 1980), *quoting* 67 C.J.S. *Officers* § 208, p. 686 (1978). Because the ministerial component of the hypothetical duty to report does not serve the special, direct, and distinctive interests of individual patients, it does not create a duty owed the individual, the

---

1. Plaintiffs contend that the breach of relator's statutory duty is alleged by the language in their petition which states that relator

   failed to protect decedent by following such standards of monitoring facility maintenance and housekeeping services in such a way as to result in capital improvements necessary for patient safety.

However, this language is not sufficient to plead either a duty to report or its breach.

2. With respect to official immunity for negligent performance of discretionary duties, *see* discussion, *infra.*

breach of which provides the basis for a private cause of action.

Plaintiffs' hypothetical required reports in this case are those designed to provide state government with the information it deems fundamentally necessary to enable it to make decisions with regard to administration and/or funding of the system as a whole. In reporting as commanded, relator would be serving solely a state interest—that of obtaining objective, categorical information, on the basis of which to compare and prioritize competing needs within the system. To the extent the reporting requirement does not permit superintendents to exercise their discretion in determining what conditions should be considered material by the state, according to their understanding of the patients' needs, the duty to report is not responsive to those individual needs, and serves only the interests of the entire system.

In a similar case, it was held that a public officer's duty to report regulatory violations by child care centers did not give rise to a cause of action by the parents of a child injured as a result of an unreported violation. *Jamierson v. Dale*, 670 S.W.2d 195 (Mo.App.1984); *see also Modlin v. City of Miami Beach*, 201 So.2d 70 (Fla.1967) (no private duty owed by building inspector to person injured in building collapse in suit for negligent inspection).

Since the hypothesized duty to report on the part of relator fails to describe a ministerial duty owed to plaintiffs' decedent, no viable cause of action is pleaded and prohibition is appropriate. *State ex rel. Dept. of Agriculture, supra*, 687 S.W.2d at 181. It is irrelevant to the question of liability for breach of a ministerial duty that plaintiffs now characterize that breach as "willful defiance." *Nelson*, 537 F.Supp. at 611.

### III.

■ Nevertheless, plaintiffs contend that, even if the statutory duty to report is discretionary, relator's violation of that duty is not immune because his "defiance" of this duty was "maliciously and willfully

wrong," *citing Reed v. Conway*, 20 Mo. 22, 44 (1854).

As previously noted, plaintiffs' amended petition does not aver a breach of a statutory obligation, either ministerial or discretionary. Furthermore, plaintiffs do not contend that relator's violation of some duty other than the statutory duty to report was "willful and malicious," and therefore not immune. However, because prohibition is an extraordinary remedy which should only be employed in unequivocal cases, *Derfelt v. Yocum*, 692 S.W.2d 300, 301 (Mo. banc 1985), we will examine whether the allegations of the petition are sufficient to permit the underlying action to proceed against the relator under the exception to immunity invoked by plaintiffs. In doing so, we consider the allegations in the dual context of the hypothesized discretionary duty to report and the general discretionary duty of care.

Although it is stated a variety of ways, it is generally held that official immunity applies to all discretionary acts except those done in bad faith or with malice. State ex rel. *Funk v. Turner*, 17 S.W.2d 986, 991 (Mo.App.1928), *op. after certification*, 328 Mo. 604, 42 S.W.2d 594 (1931) (acting "from a spirit of willfulness, corruption, and malice"); *Max M. v. Thompson*, 592 F.Supp. 1450, 1460 (N.D.Ill.1984) (applying Illinois law) ("exhibited malice and corrupt conduct"); *Trimble v. City and County of Denver*, 697 P.2d 716, 729 (Colo. banc 1985) ("willful, malicious or intended to cause harm"); *Gray v. Linahan*, 157 Ga.App. 227, 276 S.E.2d 894, 896 (1981) (acting "in a spirit of willfulness, maliciousness, or corruption"); *Towse v. State*, 647 P.2d 696, 702 (Hawaii 1982) ("motivated by malice, and not by an otherwise proper purpose"); *Elview Construction Co., Inc. v. North Scott Community School District*, 373 N.W.2d 138, 145 (Iowa 1985) ("bad faith, self-dealing or fraud"); *Whitney v. City of Worcester*, 373 Mass. 208, 366 N.E.2d 1210, 1217 (Mass.1977) (immunity for acts "in good faith without malice and without cor-

ruption"); *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641, 668 (1984) (immunity for acts "in good faith"); *Board of County Commissioners of Lander County v. Cirac*, 98 Nev. 57, 639 P.2d 538, 539 (1982) ("willfulness, malice, or corruption"); *Wiggins v. City of Monroe*, 73 N.C. App. 44, 326 S.E.2d 39, 43 (1985) ("corrupt or malicious"); *Catalina v. Crawford*, 19 Ohio App.3d 150, 483 N.E.2d 486, 489 (1984) ("bad faith or a corrupt motive"); *Oyler, supra*, 618 P.2d at 1050 ("acts done in bad faith"); *Buckner v. Carlton*, 623 S.W.2d 102, 104 (Tenn.Ct.App.1981) ("willfulness, malice, or corruption"); *Clipse v. Gillis*, 20 Wash.App. 691, 582 P.2d 555, 558 (1978) ("corrupt or malicious motives"); *Ibrahim v. Samore*, 118 Wis.2d 720, 348 N.W.2d 554, 558 (1984) ("malicious, willful and intentional"); *compare Estate of Burks v. Ross*, 438 F.2d 230, 235 (6th Cir. 1971) (supervisor of mental hospital absolutely immune from suit for escape and apparent suicide of patient); *Tango v. Tulevech*, 61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182, 185 (1983) (discretionary functions absolutely immune).

The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury.[3] In *Grad v. Kaasa*, 321 S.E.2d 888, 890–91 (N.C.1984), the court stated that

A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. [citation omitted] "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." [quoting *Givens v. Sellars*, 273 N.C. 44, 159 S.E.2d 530, 535 (1968).]

In *Catalina v. Crawford, supra*, the court defined bad faith as follows:

[B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Id.*, 483 N.E.2d at 490; *see also Elliott v. Kupferman*, 58 Md.App. 510, 473 A.2d 960, 969 (1984) ("malice," in the context of statute providing official immunity, "consists of the intentional doing of a wrongful act without legal justification or excuse. An act is malicious if it is done knowingly and deliberately, for an improper motive and without legal justification."). It would appear that, since plaintiffs' petition contains no allegation of a malicious motive or purpose or of conscious wrongdoing, it therefore fails to state a claim which is not barred by official immunity.

### IV.

■ Notwithstanding the apparent requirement that a wrongful intent be pleaded, it is arguable that a further inquiry is necessary to determine whether the factual allegations of the pleadings give rise to an inference of bad faith. In *Sanders v. Daniel International Corp.*, 682 S.W.2d 803, 808 (Mo. banc 1984), this Court noted that some courts would include within "malice" conduct "which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith" or any improper or wrongful motive. Assuming this to be the relevant standard, the allegations in plaintiffs' petition nevertheless fail to state facts from which it could reasonably be

---

3. The objective standard found in numerous federal cases, which provides a breach in the summary bar of official immunity where it appears that the official's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982), is relevant only to claims based on the deprivation of constitutional or statutory rights. *Id.* at 807–8, 818, 102 S.Ct. at 2732–3, 2738; *Trimble, supra,* 697 P.2d at 729, n. 4; *Oyler, supra,* 618 P.2d at 1046–50. No such claim is asserted here.

inferred that relator acted in bad faith or from an improper or wrongful motive.

It is useful at this juncture to compare two cases involving a similar exercise of administrative discretion. In *Neal v. Donahue*, 611 P.2d 1125 (Okla.1980), plaintiffs' child was strangled to death by a juvenile psychiatric inmate who had been committed to defendant's custody after fatally strangling another child. With respect to the treating physician-defendant, plaintiffs' petition alleged: that he was aware of the dictate of the committing court that it be informed prior to the inmate's release from the direct custodial supervision of defendant and co-defendant hospital; that defendant knew of the inmate's propensity to murder small children, and therefore knew this precaution to be necessary; that defendant willingly caused the inmate to be released from his supervision and that of the hospital, prior to the time when defendant had reason to believe that the inmate had recovered from his murderous propensity; and, that defendant failed to follow the directive of the court in releasing the inmate from his and the hospital's supervision. The court held that these allegations "could fairly be construed to amount to willful, wanton acts on the part of [defendant]," *id.* at 1130, thus rendering summary disposition in favor of defendant on the basis of official immunity erroneous. Significantly, these facts exhibited a combination of knowledge, based on prior incidents, of the likelihood of the precise danger involved, coupled with a knowing removal of those means of preventing that danger at the defendant's disposal, and a direct contravention of authoritative commands in taking the complained-of action.[4]

In a contrasting case, plaintiffs, inmates in a women's penal institution, were injured in an attack by a fellow inmate in retaliation for complaints lodged with the defendant assistant warden. *Gray v. Linahan, supra.* Plaintiffs alleged that they voiced their fear of reprisals to defendant during the same conference in which the complaints were aired, although neither repeated such concern following defendant's promise to have the attacker removed from their environment within 20 minutes. Nevertheless, as the offender was being allowed unguarded leave to gather her belongings, she removed a metal closet hanger bar—which, like all the other closet bars, was unsecured—and assaulted the plaintiffs. In affirming summary judgment for defendant, the court concluded that there was no evidence that defendant knew of any prior incidence of violence by the assaulting inmate, that defendant indisputably sought to avoid a disturbance by directing the inmate to be removed promptly, and that all of the evidence indicated that defendant operated under a good faith belief that the closet bars were not likely to be used as weapons. Accordingly, there was no basis for a finding that defendant acted "in a spirit of willfulness, malice, or corruption, or in total disregard for the plaintiffs' safety." *Id.*, 276 S.E.2d at 897.

Of the two cases described, the facts of the present case are more closely analogous to those of *Gray* and compel the result reached there. The most egregious interpretation of plaintiffs' allegations in Count I is that relator allowed decedent to break through the window bars and jump from the window to his death.[5] However, there is no assertion by plaintiffs that relator knew of a prior history of attempts by decedent to commit suicide by an act as violent as jumping from a window, an extremely unlikely act even for one with a history of "self-destructive behavior."

---

4. The result obtained in *Neal* is of questionable validity in Missouri, in light of this Court's holding in *Sherrill v. Wilson*, 653 S.W.2d 661 (Mo. banc 1983), that treating physicians owed no tort duty to members of the general public regarding the decision to release a mental patient under involuntary commitment.

5. An alternative interpretation is that relator, by not reporting the condition of the window bars when discretion permitted, failed to obtain a needed capital improvement, which would have prevented decedent from jumping.

There is also no allegation that relator disobeyed specific directives to take special precautions to prevent such an attempt. Nor is there any allegation of a condition of the window bars which obviously and effectively rendered them useless as a means of preventing an attempted suicide. Furthermore, there is no allegation that relator, having become aware of the total failure of the window barriers to afford restraint, failed to either institute or maintain supervision calculated to prevent decedent from taking his own life. In light of such deficiencies, a trier of fact could not reasonably conclude that relator acted in bad faith or with malice.

## V.

The remaining two counts also clearly fail to state facts from which it could reasonably be inferred that relator acted in bad faith or from some improper motive. There are no allegations in the second count of any actual knowledge on the part of relator of a danger posed by an employee or policy. Nor is there an allegation in the third count that relator had actual, contemporaneous knowledge of decedent's medical condition during the period following his injury.

Since relator is immune as a matter of law from an action based on the facts pleaded in the present case, the preliminary rule in prohibition is made absolute.

All concur.