

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. JAYLA RUIZ      )
MORALES, JOHN KIMANI, AND   )
VALARIE JOHNSON,           )
                               )
            Relators,       )
v.                             )      No. SC100069
                               )
THE HONORABLE DEBORAH ALESSI,  )
                               )
           Respondent.    )

*Opinion issued December 19, 2023*

### ORIGINAL PROCEEDING IN PROHIBITION

Sally Leniger, in her capacity as surviving legal guardian, asserted a wrongful death action against the St. Louis Developmental Disabilities Treatment Center-St. Charles Habilitation Center ("the center") and several of its staff members including Jayla Ruiz-Morales, John Kimani, and Valarie Johnson ("the employees"). Leniger was the guardian of Ronald Scheer, a patient at the center, who died while he was in the center's care.

The employees filed a motion to dismiss on the basis of official immunity. The circuit court overruled the motion. The employees now seek a writ of prohibition barring the circuit court from taking any further action other than to vacate its order overruling the employees' motion to dismiss and to enter judgment for the employees. Finding the employees are entitled to official immunity, this Court's preliminary writ of prohibition is now made permanent.

## Factual and Procedural Background

Scheer was a resident at the center from 1974 to the time of his death on June 29, 2020. Scheer died after he slid down in his wheelchair and the wheelchair's belt constricted his breathing. Scheer was non-verbal, non-ambulatory, and completely dependent on others for basic needs and survival. To move from place to place, Scheer required a wheelchair and staff assistance.

The center is a medical facility operated by the Missouri Department of Mental Health. Pursuant to state and federal law, the center developed and maintained an individual support plan ("ISP") for Scheer. Scheer's ISP contained orders from doctors, physicians, and the occupational and physical therapy department. The ISP required staff to provide 24-hour supervision to Scheer, check on Scheer every 30 minutes, check on and replace Scheer's incontinence pad every two hours, and reposition Scheer every two hours.

Because Scheer had a history of sliding down in his wheelchair, his wheelchair was fitted with a lap seatbelt and pelvic harness. Scheer's ISP required staff to secure the seatbelt and pelvic harness, ensure the seatbelt and pelvic harness were properly fastened at all times, and notify the department if Scheer's equipment was damaged or missing.

On June 29, 2020, around 5 p.m., Ruiz-Morales removed Scheer from bed and placed him in his wheelchair. Ruiz-Morales secured Scheer's seatbelt but did not secure his pelvic harness. Ruiz-Morales fed Scheer while he was seated in his wheelchair but still did not secure the pelvic harness. After feeding Scheer, Ruiz-Morales wheeled him into the living room. Kimani and Johnson saw Scheer in the living room but did not check to

2

make sure his pelvic harness was secured. Around 5:50 p.m., Ruiz-Morales moved Scheer to his bedroom and left him in his wheelchair without the pelvic harness secured.

Around 8:05 p.m., staff found Scheer in his bedroom with his legs touching the floor, buttocks on the wheelchair footrests, and head on the seat of the wheelchair with the wheelchair seatbelt around his neck. Scheer was pronounced dead at 9:27 p.m. An autopsy listed the immediate cause of death as "hanging."

Scheer's surviving legal guardian, Leniger, sued the center and the employees.[1] The employees were assigned to care for the residents of Home Eight in the center, where Scheer resided. The employees were on duty the day Scheer died. None of the employees checked on Scheer, repositioned Scheer, or examined his incontinence pad between 5:50 p.m., when Ruiz-Morales moved Scheer into his room, and 8:05 p.m., when Scheer was discovered hanging from his wheelchair seatbelt.

Leniger's petition included 11 counts. Count I alleged wrongful death based on medical malpractice against the center. The remaining counts alleged wrongful death based on medical malpractice and wrongful death based on negligence against each of the employees. Leniger alleges the employees failed to: ensure Scheer was properly secured with the seatbelt and pelvic harness; provide 24-hour supervision; check on Scheer every 30 minutes; properly reposition Scheer; and familiarize themselves with the ISP. Leniger alleged the employees were not entitled to official immunity because they were performing ministerial duties and providing medical care in a non-emergency situation.

---

[1] Two additional staff members were included in Leniger's petition who either were not served or were dismissed from the action.

The employees filed a motion to dismiss on the basis of official immunity. The circuit court sustained the motion to dismiss Count I on the basis of sovereign immunity. The circuit court overruled the motion as to the other counts. The employees sought a writ of prohibition from the court of appeals barring the circuit court from taking any further action other than to vacate its order overruling the employees' motion to dismiss and to enter judgment for the employees. The court of appeals denied the writ. The employees then sought a writ of prohibition from this Court. This Court issued a preliminary writ of prohibition, which is now made permanent.

## Analysis

This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, § 4.1.

> A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. Barron v. Beger*, 655 S.W.3d 356, 359-60 (Mo. banc 2022).

When a defendant is entitled to immunity "as a matter of law, prohibition is an appropriate remedy." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 444 (Mo. banc 1986). "Prohibition is particularly appropriate when the trial court, in a case where the facts are uncontested, wrongly decides a matter of law thereby depriving a party of an absolute defense." *State ex rel. Howenstine v. Roper*, 155 S.W.3d 747, 749 (Mo. banc 2005), *overruled on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603, 614 n.13 (Mo. banc 2008).

4

"'Immunity' connotes not only immunity from judgment but also immunity from suit." *State ex. rel Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019) (quoting *State ex rel. Mo. Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985)). "Official immunity ... protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Barron*, 655 S.W.3d at 360 (alteration in original) (quoting *Alsup*, 588 S.W.3d at 190).

Official immunity does not apply "when a public officer fails to perform a **ministerial** duty required of him by law[.]" *Alsup*, 588 S.W.3d at 191. The category of ministerial acts is a narrow one:

> Generally, a ministerial act has long been defined as merely "clerical." And this Court has noted that a ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. For more than a century, this Court has held that a ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to the public official's judgment or opinion concerning the propriety or impropriety of the act to be performed. ***Thus, the central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task – by definition – is not ministerial.***

*Id*. (emphasis added) (alteration omitted) (internal citations and quotations omitted).

"[A] plaintiff must plead facts establishing an exception to official immunity[.]" *Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo. App. 2014). "Absent these allegations, the pleadings are insufficient to state a claim which is not barred by the doctrine of official immunity as a matter of law." *Twiehaus*, 706 S.W.2d at 445.

5

Here, both parties agree the employees are public officials and their actions were within the scope of their duties as medical caregivers. The only issue is whether the duties required by the ISP were discretionary or ministerial.

Leniger argues the employees' failure to perform duties in the ISP was a failure to perform a ministerial duty because the ISP created a legal mandate the employees were required to follow. [2] Specifically, Leniger argues the direction in the ISP to fasten Scheer's seatbelt and pelvic harness while he was in the wheelchair was mandatory under the ISP. Leniger argues the ISP's requirements to fasten the seatbelt and pelvic harness were not discretionary because there was a clear and unequivocal duty to utilize both and there was no room for deviation from these tasks. Similarly, Leniger argues the requirements to provide Scheer 24-hour supervision, check on him every 30 minutes, examine his incontinence pad every two hours, and reposition him every two hours were ministerial because there was a clear and unequivocal duty to perform the tasks with no room for deviation.

The central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains *any* discretion in completing an act:

> The fact that a statute or regulation may confer authority – or even a duty – to act in a given situation says nothing about whether the act authorized or compelled is the sort of ministerial or clerical act to which official immunity does not extend. Thus, the relevant inquiry is not whether the law authorizes, regulates, or requires an action. Instead, it is whether the action itself is ministerial or clerical. And, even when a clerical or ministerial act appears to

---

[2] The center had a duty to create an ISP for each individual patient pursuant to 42 C.F.R. 441.301. The Missouri Division of Developmental Disabilities also requires an ISP for persons receiving services or support through the division. 9 C.S.R. 45-3.010.

6

be authorized or required by statute, official immunity will still apply if the official retains authority to decide when and how that act is to be done.

*Alsup,* 588 S.W.3d at 192-93 (internal citations and footnotes omitted).  Ministerial acts mirror those for which a writ of mandamus would issue:

> [T]he test for whether a task is "ministerial" for purposes of a writ of mandamus is precisely the same as the test for whether that task is "ministerial" such that official immunity will not apply. Accordingly, if a writ of mandamus would not have been proper to compel an official to perform an act, it should follow that official immunity protects an official from liability for injuries arising from the performance of that act.

*Id*. at 191-92 (internal citations and quotations omitted).

"Rubber stamp" duties of public officials fall into the category of ministerial tasks. *See State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1, 12 (Mo. banc 2023) (holding a statute requiring the attorney general to approve the auditor's fiscal note summaries unless they violate legal content and form requirements imposed a ministerial duty); *Mo. Coal. for Env't v. Joint Comm. on Admin. Rules*, 948 S.W.2d 125, 131 (Mo. banc 1997) (holding a statute requiring the secretary of state to publish a final order of rulemaking imposed a ministerial duty).  Such duties compel that "a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed." *Forester v. May*, 671 S.W.3d 383, 387 (Mo. banc 2023) (alteration in original).

When even slight discretion exists, the duty is not ministerial.  *See id*. at 388 (finding no ministerial duty to complete a report for a child abuse investigation when a children's division worker had discretion to complete a form, not complete a form because

7

the child had been seen previously, or not complete a form because the child would be referred); *State ex rel. Kan. City Power & Light Co. v. McBeth*, 322 S.W.3d 525, 532 (Mo. banc 2010) (finding no ministerial duty to value property according to a company's reported costs when the assessor has discretion to determine the actual cash value and the true value of local property); *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763-64 (Mo. banc 2006) (finding no ministerial duty to comply with traffic laws when the officer had discretion in how to respond to an emergency by deciding what speed to travel, the best route to take, and choosing to activate or not activate lights and sirens).

The employees had discretion in how to perform the tasks in the ISP. Scheer's ISP required the employees to check on him periodically, check his incontinence pad, and use a seat belt and a pelvic harness. The employees had to use discretion to determine if Scheer needed additional care, and, if so, what care to be administered. Similarly, the requirement to reposition Scheer every two hours required discretion to determine the manner in which to reposition him. Reviewing an ISP would require the employees to use discretion to determine on which sections to focus and how to use the information. Finally, the requirement to secure the pelvic harness involved the use of discretion. The harness manufacturer's instructions include variations for how to use the harness. Determining how tightly to fasten the straps and assessing the condition of the equipment all requires discretion. All of the tasks in the ISP required staff to use discretion.[3]

---

[3] Beyond the tasks within the ISP requiring discretion, the statute mandating the implementation of an ISP grants caregivers discretion. "Changes in training plans or methods to ensure progress toward achievement of outcomes already documented in the ISP may be made by the provider of the related service *as needed without approval* of the ISP team." 9 C.S.R. 45-3.010(10) (emphasis added).

Ministerial tasks are either completed as required by law or not completed. Tasks that can be completed partially or through different methods are not ministerial. Unlike a statute triggering a rote duty to stamp or not stamp, approve or not approve, the tasks in this case could have been completed in various ways by various people. *Compare Alsup*, 588 S.W.3d at 194 (stating restraining a child could have been achieved in various ways by various people), *and Fitz-James,* 670 S.W.3d at 12 (holding approving fiscal note summaries is the only course of action for the attorney general when the summaries meet the statutory requirements). Because the tasks the employees completed involved discretion, the ministerial exception does not apply. The employees are protected by official immunity.[4]

## Conclusion

This Court's preliminary writ of prohibition is made permanent.

_____
KELLY C. BRONIEC, JUDGE

Russell, C.J., Powell, Fischer,
Ransom and Wilson, JJ., concur.
Gooch, J., not participating.

---

[4] Leniger made an additional claim that the emergency exception should apply. No such affirmative defense exists in Missouri. "Whether [the employees were] responding to an emergency is not an element of the of the affirmative defense of official immunity." *Barron*, 655 S.W.3d at 361.