# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1717
_____

Yitzchak Simon

*Plaintiff - Appellee*

v.

Tishaura O. Jones, in her individual capacity; Yusef Scoggin, in his individual capacity

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 15, 2026
Filed: February 13, 2026
[Published]
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Yitzchak Simon brought constitutional and state law claims against two former officials of the City of St. Louis (the "City"). Simon brought these claims against the former mayor of the City, Tishaura Jones, and the former director of the City's Department of Human Services, Dr. Yusef Scoggin. Mayor Jones and

Director Scoggin moved for summary judgment, invoking qualified and official immunity. The district court denied their motion in part, determining that there were genuine disputes of material fact as to whether Mayor Jones and Director Scoggin were entitled to immunity against certain claims. We vacate and remand for the district court to complete its qualified and official immunity analyses by construing the disputed facts in the light most favorable to Simon.

## I. Background

Simon was an outreach worker at St. Patrick Center ("SPC"). SPC is a nonprofit organization that is dedicated to combatting homelessness and that receives City funding. In March 2023, the City partnered with SPC to decommission a homeless encampment near the City's riverfront. Simon participated in multiple protests against the decommissioning, including a protest at City Hall that was covered by local media. According to Simon, he was a well-known opponent of the decommissioning. On March 24, 2023, Simon arrived at the encampment as City workers were attempting to decommission it. The parties disagree on what happened next.

As Simon tells it, he did "a lot of standing around" and "that's pretty much it." Simon also recalls that he spoke with a couple of City workers and a few of the encampment's residents to say hello and to ask what was happening. In contrast, Mayor Jones and Director Scoggin allege that they received reports that Simon made offensive hand gestures to City workers and interfered with the City's efforts by telling the encampment's residents that they did not need to leave.

One week later, SPC sent Simon a termination letter. The letter stated: "Your actions on March 24th, 2023 resulted in the threat of Saint Patrick Center losing funding and created conflict with our funders and supporters and is the primary reason for termination." Simon alleges that he was terminated because Mayor Jones called SPC's CEO and threatened to cut City funding for SPC on account of Simon's

behavior. Simon also alleges that Director Scoggin "assisted" Mayor Jones in making this threat and lied to SPC about Simon's conduct.

Simon sued Mayor Jones and Director Scoggin. Simon brought claims under 42 U.S.C. § 1983 against them in their official and individual capacities, alleging First Amendment retaliation, civil conspiracy, and violations of due process. Simon also brought a tortious interference claim under Missouri law. Mayor Jones and Director Scoggin moved for summary judgment, arguing, among other grounds, that they had (1) qualified immunity against Simon's individual-capacity First Amendment and due process claims and (2) official immunity against his tortious interference claim.

The district court granted summary judgment to Mayor Jones and Director Scoggin on some of Simon's claims, but not on his individual-capacity First Amendment and due process claims or his tortious interference claim. The district court reasoned that the law is clearly established that government officials may not retaliate against an individual for exercising First Amendment rights and that they may not arbitrarily interfere in an individual's private employment relationship. The district court then determined that there were genuine disputes of material fact as to whether Mayor Jones and Director Scoggin could receive qualified immunity on Simon's First Amendment and due process claims, "including but not limited to":

> the details of Simon's conduct and the nature of his statements made at and during the decommissioning of the Riverfront encampment on March 24, 2023; the truthfulness of Scoggin's representations to Jones and other City officials regarding Simon's conduct and statements at and during the Riverfront decommissioning; whether Jones threatened funding to SPC if it did not take adverse employment action against Simon, the information upon which Jones relied in making the alleged threat, and SPC's understanding of Jones's ability and/or authority to affect its funding; and who at SPC made the decision to terminate Simon's employment, the reason(s) for termination, and the extent to which the information Jones conveyed to SPC influenced that decision.

The district court concluded that, because these facts were disputed, it could not grant qualified immunity.

The district court also determined that there were genuine disputes of material fact as to whether Mayor Jones and Director Scoggin had official immunity against Simon's tortious interference claim, specifically:

> whether Scoggin acted in bad faith or with malice in his representations of Simon's behavior at and during the Riverfront decommissioning, and whether Jones acted in bad faith or with malice in her alleged threats to SPC that public funding would be withheld if it did not take adverse employment action against Simon . . . .

The district court therefore concluded that it could not grant official immunity. Mayor Jones and Director Scoggin appeal the denial of qualified and official immunity.

## II. Discussion

### A.

"While we ordinarily lack jurisdiction over an interlocutory appeal challenging the denial of a motion for summary judgment, we have jurisdiction when summary judgment is denied on the issue of qualified immunity." *Kelley v. Pruett*, 163 F.4th 1130, 1134 (8th Cir. 2026) (citation modified). But that jurisdiction is limited. *Id.* We "may not review the district court's determination about what factual issues are genuine." *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 835 (8th Cir. 2021). Instead, we may only review the district court's denial of qualified immunity "to the extent that it turns on an issue of law." *Id.* Thus, "we accept as true the district court's findings of fact to the extent they are not blatantly contradicted by the record, and review the district court's conclusions of law de novo." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation modified). And if the district court "fails to make a factual finding on an issue relevant to our

-4-

purely legal review, we determine what facts the district court, in the light most favorable to the nonmoving party, *likely* assumed." *Id.* (citation modified). "Occasionally, [however,] a district court provides such scant factual analysis that this task is impossible, and we must remand for additional explanation." *Id.* at 1117.

"Whether the district court upheld its threshold duty to make a thorough determination of [an official's] claim of qualified immunity is a legal question that we may review even under our limited jurisdiction." *Watson v. Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021) (citation modified). To uphold that threshold duty, a district court "must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *Kelley*, 163 F.4th at 1134 (citation modified). The court should then "determine if those facts demonstrate a constitutional violation that is clearly established." *Id.* "[C]learly established law must be 'particularized' to the facts of the case . . . ." *Boudoin v. Harsson*, 962 F.3d 1034, 1039 (8th Cir. 2020); *see Scott v. Tempelmeyer*, 867 F.3d 1067, 1070-72 (8th Cir. 2017).

Here, the district court asserted that there were certain genuine disputes of material fact, but it then failed to view those facts in the light most favorable to Simon. To take one example, the district court stated that "the details of Simon's conduct" on March 24 were genuinely disputed—but never explained what Simon's conduct actually was when viewed in the light most favorable to him. To take another example, the district court stated that "the information upon which Jones relied in making the alleged threat [to SPC]" was genuinely disputed, but again did not explain what that information actually was when viewed in the light most favorable to Simon. To take a third example, the district court stated that "the truthfulness of Scoggin's representations to Jones and other City officials" was genuinely disputed, but never explained what Director Scoggin's alleged representations actually were when viewed in the light most favorable to Simon.

Ordinarily, we would simply determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed when denying qualified immunity to Mayor Jones and Director Scoggin. *See Dawson*, 752 F.3d at 1116. But here, this task is impossible. *See id.* at 1117. The district court might have taken one of several avenues to determine that the facts could reveal First Amendment and due process violations. To illustrate, perhaps Simon's conduct on March 24 was protected expression, and Mayor Jones called SPC's CEO because of that conduct. Perhaps Simon's conduct on March 24 was not protected expression, but some of his conduct from an earlier protest was, and Mayor Jones had that conduct in mind. Perhaps Mayor Jones called SPC's CEO because of information that Director Scoggin shared about Simon, information which may or may not have been true. Possibilities abound. To be clear, we are not opining as to whether any of those sets of assumed facts would indicate a constitutional violation. We are simply illustrating that the district court left us "only able to speculate about rather than review" its decision. *See Boyd*, 2 F.4th at 1111.

And because the district court never adopted a set of assumed facts, the district court never "conduct[ed] a legal analysis based upon assumed facts." *See Franklin for Est. of Franklin v. Peterson*, 878 F.3d 631, 638 (8th Cir. 2017). Although the district court asserted that it had identified genuine disputes of material fact, it "did not test [Simon's] version of the facts against the substantive law" to determine that those disputes were, indeed, material. *See Boyd*, 2 F.4th at 1111. Further, the district court never explained why the facts here, viewed in the light most favorable to Simon, reveal a violation of a clearly established constitutional right. The district court did not explain "whether the violative nature of *particular* conduct is clearly established . . . . in light of the specific context of [this] case." *See Shultz v. Buchanan*, 829 F.3d 943, 948 (8th Cir. 2016). Nor could it do so, because it did not assume any facts regarding Mayor Jones and Director Simon's conduct. "The district court should have identified the disputed facts, construed them in the light most favorable to [Simon], and then considered, on those facts, whether [Simon] had

shown a violation of a constitutional right that was clearly established at the time of the incident." *See Kelley*, 163 F.4th at 1134.[1]

**B.**

Under Missouri law, official immunity protects "public officers acting within the scope of their authority" from liability for "injuries arising from their discretionary acts or omissions." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 444 (Mo. 1986); *see also id.* (adding that officers "may be held liable for torts committed when acting in a ministerial capacity"). But officers are not entitled to this immunity if they act with malice or bad faith. *Id.* at 446. Our review of a denial of official immunity, like our review of a denial of qualified immunity, is limited to "abstract issues of law." *See Dreith v. City of St. Louis*, 55 F.4th 1145, 1148 (8th Cir. 2022).

Again, however, the district court did not make sufficient findings of fact to permit meaningful appellate review. *See Dawson*, 752 F.3d at 1116-17. The district court determined that there were genuine issues of material fact as to "whether Scoggin acted in bad faith or with malice in his representations of Simon's behavior [to SPC]" and whether "Jones acted in bad faith or with malice in her alleged threats to SPC that public funding would be withheld." But "[n]owhere did the court say which facts would allow a reasonable jury to conclude" that Mayor Jones and Director Scoggin "acted with malice or in bad faith." *See N.S. v. Kansas City Bd. of Police Comm'rs*, 933 F.3d 967, 971 (8th Cir. 2019). The district court's analysis is

---

[1]For instance, suppose that the facts, viewed in the light most favorable to Simon, reveal that Mayor Jones retaliated against Simon for *perceived*, as opposed to actual, expressive conduct. The district court would then need to determine whether such retaliation amounted to a constitutional violation, and if so, whether the violation was clearly established. We do not suggest any resolution to that hypothetical here; instead, we offer it simply to illustrate the importance of defining a clearly established right with the requisite particularity.

thus "too cursory" for us to say whether the facts justify denying official immunity. *See id.*

## III.  Conclusion

Accordingly, we vacate the district court's denial of qualified and official immunity and remand for reconsideration consistent with this opinion.

_____