Stephanie MCCORMACK, Grant Alec McCormack, by and through his Next Friend, Stephanie McCormack, and Natalie Grace McCormack, by and through her Next Friend, Stephanie McCormack, Plaintiffs–Appellants,

v.

Joshua C. DOUGLAS, Defendant–Respondent,

and

Ebenezer Fire Protection District, Defendant.

No. SD 30274.

Missouri Court of Appeals, Southern District.

Nov. 16, 2010.

Motion for Rehearing or Transfer Denied Dec. 8, 2010.

Application for Transfer Denied Jan. 25, 2011.

Greggory D. Groves, Heather L. Rooney, Springfield, MO, for Appellants.

Michael E. McCausland, Charles A. Edgeller, Kansas City, MO, for Respondent Joshua C. Douglas.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Appellants,[1] survivors of decedent Gary McCormack, brought a wrongful death claim against Joshua C. Douglas ("Respondent"), a volunteer firefighter, and the Ebenezer Fire Protection District. The court entered a grant of summary judgment in favor of Respondent on the basis of official immunity and the public duty doctrine. Appellants now appeal that grant of summary judgment entered against them. We find no error in the entry of summary judgment and affirm the judgment.

## I. Undisputed Facts

On the early morning of October 6, 2007, emergency personnel were summoned to respond to a vehicular accident that occurred on White Tail and Highway 13 in Greene County. Both the Greene County Sheriff's Department (the "Department") and the Ebenezer Fire Protection District (the "District") were alerted to the accident. Sheriff's Deputy Gary McCormack, the decedent, responded to the call for the Department, while volunteer firefighter Respondent answered the call the District sent. Respondent radioed the District's dispatcher that he was en route to the emergency call. The dispatcher then instructed him to drive to Fire Station One to pick up an ambulance-type vehicle equipped with rescue and medical equipment. Respondent proceeded to travel from his residence in a vehicle equipped with emergency lights and sirens, which were activated.

En route to Fire Station One, the front of Respondent's vehicle, which was traveling north on Farm Road 145, collided at an intersection with the left front fender of the vehicle driven by the decedent, who was traveling west on Route WW driving a fully marked Department patrol car with its emergency lights and sirens activated. Deputy McCormack died from blunt force trauma as a result of the collision. At the intersection where the collision occurred, Farm Road 145 and Route WW, no traffic control devices governed the movement of the decedent's vehicle, while a stop sign governed Respondent's movement, requiring him to stop and yield to traffic. The speed limit on Route WW is fifty-five miles per hour where Route WW and Farm Road 145 intersect. The speed limit on Farm Road 145, prior to reaching the stop sign at Farm Road 145 and Route WW, is forty-five miles per hour. Respondent was injured in, and has no memory of, the collision. There were no eye witnesses to the collision.

An accident reconstruction report prepared by the Missouri State Highway Patrol determined that the decedent's cruiser was traveling about ninety-three miles per hour as it approached the intersection where the collision occurred, and slowed to about seventy-five miles per hour at impact, and that Respondent's vehicle was

1. Appellants are Stephanie McCormack, Grant Alec McCormack, and Natalie Grace McCormack, decedent's wife and two minor children.

going approximately twenty-seven miles per hour at impact. Timber and vegetation along the southeast corner of the intersection where Route WW and Farm Road 145 meet restricts the view of drivers traveling north on Farm Road 145 and, therefore, a driver traveling northbound on Farm Road 145, as Respondent was immediately preceding the collision, cannot see westbound traffic on WW unless the driver pulls north of the stop sign.[2] The report concluded that the collision was caused by Respondent's failure to stop or slow his vehicle at the stop sign posted for northbound traffic on Farm Road 145 as necessary for safe operation. The District's "Intersection Crossing Policy," which applies to both stop signs and stop lights, required the District's firefighters when "crossing on red" in response to an emergency call to come to a complete stop, establish eye contact with drivers of other vehicles, wait two seconds, and then proceed with caution.

 Appellants brought suit alleging negligence by Respondent and the District under the doctrine of *respondeat superior.* Respondent moved for summary judgment, asserting that official immunity and the public duty doctrine insulated him from liability. The trial court granted Respondent's motion and entered judgment in favor of Respondent. On appeal, Appellants contend that Respondent is not entitled to the protections of official immunity or the public duty doctrine.

## II. Analysis

We review a summary judgment *de novo.* *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper where the motion, response, reply, and sur-reply "s how that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6).[3] Under *de novo* review of a summary judgment, this Court will review the record from the trial court and independently decide whether there were no genuine issues of material fact and that the successful party was entitled to judgment as a matter of law. *In re Gene Wild Revocable Trust,* 299 S.W.3d 767, 773 (Mo. App. S.D.2009). We review the record in the light most favorable to the party whom judgment was entered against, and draw all reasonable inferences in that party's favor. *ITT,* 854 S.W.2d at 376. A "genuine issue" exists where two plausible, but contradictory, accounts of the essential facts are contained in the record. *Id.* at 382. The burden of establishing a legal right to judgment and the absence of any genuine issues of material fact is on the movant. *Id.* at 380.

 Official immunity is a doctrine that shields public employees from liability for acts of negligence during the course of their official duties in the performance of discretionary acts. *Southers v. City of Farmington,* 263 S.W.3d 603, 610 (Mo. banc 2008). The doctrine does not shield public employees from liability for torts committed in the performance of ministerial acts. *Id.* "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* A ministerial act is an act " 'of [ ] clerical nature which

---

**2.** The reconstruction report found that had Respondent stopped his vehicle just past the stop sign on Farm Road 145, but without entering the intersection, he would have had an unobstructed view of the patrol car the decedent was driving for at least fifteen seconds.

**3.** All references to rules are to Missouri Court Rules (2010), unless otherwise specified.

a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoting *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App. W.D. 1979)).

 Three factors are considered in determining whether an act is ministerial or discretionary: "(1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Southers*, 263 S.W.3d at 610. The policy behind official immunity encourages officials to make decisions that affect public safety and welfare free from "[t]he fear of personal liability." *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987), *overruled on other grounds by Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 766 n. 8 (Mo. banc 2006). "Even a discretionary act, however, will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption." *Southers*, 263 S.W.3d at 610. Under *Southers* and *Davis*, public officials are engaging in discretionary conduct when responding to emergency calls in emergency vehicles. *Southers*, 263 S.W.3d at 618–19; *Davis*, 193 S.W.3d at 763.

 The public duty doctrine, on the other hand, protects public employees from civil liability for the breach of a duty owed to the general public, as opposed to a particular individual. *Southers*, 263 S.W.3d at 611. "This public duty rule is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public." *Id.* The rule does not shield a public employee from a breach of a duty involving a minis-

terial act in which the injured party had a "'special, direct, and distinctive interest.'" *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986) (quoting *Oyler v. State*, 618 P.2d 1042, 1050 (Wyo.1980)). That is, the public duty doctrine does not apply "when injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty." *Southers*, 263 S.W.3d at 612. Whether an individual has a special, direct, and distinct interest is judged on a case-by-case basis. *Id. Southers* makes clear that a public employee's conduct in responding to an emergency arises from a duty owed to the public. *Id.* at 618–20.

 Like the official immunity doctrine, the public duty doctrine does not shield a public employee from liability where the employee acts in bad faith or with malice. *Id.* at 612. Under *Southers*, the police officer, acting as an emergency responder, was protected by the public duty doctrine and had official immunity in the emergency response situation where he was operating his emergency vehicle in an emergency situation and did not act willfully wrong, in bad faith, or with malice. *Southers*, 263 S.W.3d 603. Appellant urges this Court to find that Respondent's conduct in violating the District's policy and with no clear view of oncoming traffic, by running the stop sign, was willfully wrong, in bad faith, or with malice, and, as such, falls within an exception to the doctrines.

 Malice exists where one "'wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.'" *Adolf*, 706 S.W.2d at 447 (quoting *Grad v. Kaasa*, 312 N.C. 310, 321 S.E.2d 888, 890 (1984)). An act is wanton when "'done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.'" *Id.* (quoting *Grad v.*

*Kaasa,* 312 N.C. 310, 321 S.E.2d 888, 890–91 (1984)). Lastly, bad faith " 'embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " *Id.* (quoting *Catalina v. Crawford,* 19 Ohio App.3d 150, 483 N.E.2d 486, 490 (1984)).

In *Southers,* a police officer joined a pursuit as the third police vehicle following a suspect. *Southers,* 263 S.W.3d at 608. This arguably violated the police department's vehicular pursuit policy, which stated that "police pursuits should normally be limited to no more than one primary vehicle and one backup vehicle, unless specifically instructed otherwise[.]" *Id.* The plaintiff driver had pulled to the side of the road to allow the first two police cars to pass, and, believing the chase had passed her, pulled her vehicle from the roadside into the lane, where it was struck by the third officer's patrol car. *Id.* Under those facts, our supreme court found that the defendant officer was entitled to the protection of both the public duty and official immunity doctrines. *Id.* at 622.

In this case, Respondent, like the officer in *Southers,* is accused of violating the District's protocol when responding to an emergency call with lights and sirens activated. Appellants claim that Respondent's violation of the District's internal "Intersection Crossing Policy" in driving through a stop sign without stopping was willfully wrong, in bad faith, or with malice. This allegation, if proven at trial, is simply an allegation of negligence and, thus, does not rise to the level of bad faith or malice. There was simply no evidence produced prior to the grant of summary judgment, nor can there be given the fact of no eye witnesses and the lack of Respondent's

memory, that Respondent drove through the stop sign with bad faith or malice. As such, it is an act of negligence that was not willfully wrong while in the process of answering the emergency call.[4] The facts, as alleged by Respondent in the summary judgment motion, in the light most favorable to Appellants, amount to nothing more than negligence during the course of Respondent's duties in the performance of discretionary acts.

We find no meaningful distinction between this case and *Southers* sufficient to hold that Respondent acted willfully wrong, in bad faith, or with malice even if he did run the stop sign when his vehicle collided with Deputy McCormack's vehicle.

The judgment of the trial court is affirmed.

BATES, J., FRANCIS, J., concur.

---

4. To be clear, we are not stating that running a stop sign can never amount to a claim of bad faith, we are simply stating that in this case, the allegation has not done so.