

# Missouri Court of Appeals

## Southern District

### Division One

SHERI STEPHENS, )
                                    )
        Plaintiff/Appellant, )
                                    )
     vs. )    No. SD32563
                                    )    Filed: January 14, 2014
SHERIFF W. ARCHIE DUNN, )
SHERIFF JACK L. MERRITT, RETIRED, )
C.E. WELLS, JOHN DOE I, )
JOHN DOE III, and JOHN DOE IV, )
                                    )
        Defendants/Respondents,[1] )
                                    )
and )
                                      )
GERALD TUCK, JOHN DOE II, )
JOHN DOE V, and JOHN B. FREITAS, DO, )
                                    )
        Defendants. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable James R. Bickel, Special Judge

**AFFIRMED**.

Sheri Stephens ("Stephens") appeals the motion court's "Judgment" sustaining motions

to dismiss filed by Sheriff W. Archie Dunn ("Sheriff Dunn"), Sheriff Jack L. Merritt ("Sheriff

Merritt"), and C.E. Wells ("Wells"), and the "Motion to Dismiss, or in the Alternative,

---

[1] While Stephens' "Notice of Appeal" lists "Sheriff Archie Dunn, et al.," as "Defendant/Respondent" the Judgment and Order appealed from is specific only to those allegations levied against defendants Dunn, Merritt, Wells, and John Does I, III and IV.

Quash Purported Service of Process" filed on behalf of John Doe I, John Doe III, and John Doe IV ("collectively "Does I, III, and IV"). We affirm the Judgment[2] of the motion court.

## Factual and Procedural Background

On March 8, 2007, William Stephens ("decedent") was detained in Greene County on suspicion of driving with a suspended license. During this traffic stop, it was discovered decedent had an outstanding arrest warrant in Jasper County for violation of a protective order. As a result, decedent was arrested and booked into the Greene County Jail and then transferred to the Jasper County Jail on March 9, 2007.

On March 9, 2007, sometime after being booked into the Jasper County Jail, decedent was found dead in his cell. On March 9, 2010, exactly three years after decedent's death, Stephens[3] filed a "Petition for Damages for Wrongful Death" ("petition") naming and describing the following defendants:

> 3. Sheriff W. Archie Dunn . . . was the Sheriff of Jasper County . . . on March 9, 2007 and is currently the Sheriff of Jasper County, Missouri. Dunn was responsible for the safety of inmates in the Jasper County Jail and . . . holding cells on March 9, 2007 and before.
>
> 4. Sheriff Jack L. Merritt . . . was the Sheriff of Greene County . . . on March 9, 2007. Merritt was responsible for the safety of inmates in the Greene County Jail and . . . holding cells on March 9, 2007 and before.
>
> 5. C.E. Wells . . . is the former Jail Administrator of the Greene County Jail. Wells was responsible for the safety of inmates in the Greene County Jail and . . . holding cells on March 9, 2007 and before.

---

[2] Prior to the Judgment, the motion court entered an Order dated December 28, 2012, sustaining the motions to dismiss which are also the subjects of the Judgment. The Judgment was entered pursuant to the December 28, 2012 Order.

[3] At the time of his death, decedent was not married and was survived by his three children: Sheri, Ryan, and Shawn Stephens.

2

6.      Gerald Tuck ("Tuck") is the former Jail Administrator of the Jasper County Jail. Tuck was responsible for the safety of inmates in the Jasper County Jail and . . . holding cells on March 9, 2007 and before.

7.      In the alternative to paragraph 6 above, John Doe I is the former Jail Administrator of the Jasper County Jail. John Doe I was responsible for the safety of inmates in the Jasper County Jail and . . . holding cells on March 9, 2007 and before.

8.      John Doe II was the former Greene County . . . employee who oversaw the transfer of decedent to Jasper County officials . . . on March 9, 2007.

9.      John Doe III was the former Jasper County . . . employee who took transfer of decedent from John Doe II when [decedent] was transferred from Greene County . . . on March 9, 2007.

10.     John Doe IV, was the former Jasper County . . . employee whose responsibility it was to provide for, oversee and implement the policies of Jasper County . . . concerning the safety of inmates in the county jail and . . . holding cells on March 9, 2007.

11.     John Doe V was the former Greene County . . . employee whose responsibility it was to provide for, oversee and implement the policies of Greene County . . . concerning the safety of inmates in the county jail and . . . holding cells on March 9, 2007.

12.     John B. Freitas, D.O. ("Freitas"), is a practicing Doctor of Osteopathy who administered drugs to decedent on March 9, 2007, causing and/or contributing to cause his death.

The petition alleged that decedent "had a history of a threat of suicidal hanging" and while incarcerated in the Greene County Jail, attempted to injure himself by "cutting his right wrist, threatened to commit suicide, and displayed signs of agitation, depression and anxiety." As a result, decedent was placed on a "suicide watch" by "the Greene County, Missouri Sheriff's Department."

The petition also alleged that none of the defendants (excluding Freitas) informed the "proper authorities" upon transfer to Jasper County, of decedent's mental and emotional condition as exhibited while in the Greene County Jail. Stephens' petition further stated that

decedent "continued to display severe mental and emotional distress" while in the custody of Jasper County and Freitas was "summoned" to the jail.[4] Later that day, decedent was found dead in his cell after "tying [a bed sheet] to his bunk then securing it to his neck and transferring his weight onto his neck until he passed out and died."

The petition further alleged:

25. Knowing of [decedent]'s medical needs, defendants and each of them demonstrated deliberate indifference and reckless disregard of [decedent]'s medical needs, psychological needs and other needs which required attention, which the defendants and each of them had the duty to provide. Said conduct is also evidence of gross negligence, willful misconduct, bad faith, and malice toward [decedent].

26. Defendants and each of them, demonstrated evidence of gross negligence, willful misconduct, bad faith, and malice toward [decedent] by not providing continuous observations of the [decedent].

27. As a direct and proximate cause of the conduct of the defendants and each of them, [Stephens] was caused to sustain damages including funeral expenses and the loss of the services, companionship, comfort, instruction, guidance, counsel, training, and support that she would have received from [decedent] had he not died due to the reckless acts of the defendants as stated herein. In addition, [Stephens] seeks damages for the pain and suffering of [decedent] due to the acts of defendants in not properly providing supervision of him while he had known suicidal tendencies.

28. Due to the aggravating circumstances attending decedent's death, [Stephens] seeks punitive damages against defendants and each of them.

29. Defendants and each of them owed a duty to decedent to provide for his safety as follows:
   ● not allowing decedent to be left alone at any time;
   ● providing and/or arranging for medical attention to the decedent;
   ● providing and/or arranging for psychological attention to decedent;
   ● ensuring that decedent was not administered drugs which were contraindicated given his then-current medications, his mental health, his emotional stability and/or his suicidal ideations;

---

[4] Stephens' petition alleged Freitas "administered a drug" to decedent causing him further distress, and failed to properly assess decedent, administer tests, gather medical information, or determine what, if any, other medications decedent was taking thus deviating from the standard of care.

4

- providing a safe environment for the decedent in which his mental and emotional conditions would not allow him to do harm to himself;
- providing decedent a "safe room" pending his disposition in court such that decedent would not have at his fingertips the means to kill himself; and
- providing continuous observation of decedent, 24/7.

30.     Defendants and each of them breached their aforesaid duties to decedent, which proximately caused damages to [Stephens].

Although the petition was filed on March 9, 2010, summonses in the case were not requested until August 12, 2011, more than a year after the petition was filed.[5]   Following service of process, both Sheriff Dunn and Sheriff Merritt filed a "Motion to Dismiss" and suggestions in support in September 2011.   Wells also filed a "Motion to Dismiss" and suggestions in support on January 19, 2012.  These motions to dismiss alleged Stephens' petition "fails to state a claim upon which relief may be granted."   Stephens filed suggestions in opposition to the motions filed by Sheriff Dunn, Sheriff Merritt, and Wells.

In the meantime, "Affidavit[s] of Service" were filed on January 17, 2012, for Does I, III, and IV after delivering summonses and petitions to "Sgt Mauller" at the Jasper County Jail.[6]  On or about January 26, 2012, a "Motion to Dismiss or, in the Alternative, to Quash Purported Service of Process" was filed on behalf of Does I, III, and IV.

---

[5] The docket sheet indicates summonses were issued for Sheriff Dunn, Sheriff Merritt, Wells, Tuck, and Freitas on August 12, 2011, following the placement of the case on the trial court's dismissal docket on July 20, 2011, for "failure to prosecute."  In response to being placed on the dismissal docket, Stephens filed "Plaintiff's Motion to Remove the Above-Captioned Case from the Dismissal Docket."  She noted at that time that none of the defendants had been served with process, and alleged that when the lawsuit was filed, "there was an oversight by one of the paralegals in plaintiff [sic] counsel's office, and there was no request to the clerk's office for an issuance of the summons in this case."  However, we note there are no docket entries from the filing of the petition on March 9, 2010, until the Notice of Dismissal by the trial court on July 20, 2011.  There is no indication that Stephens or her counsel made any attempt to prosecute this lawsuit during this 17-month period.

[6] Also on January 17, 2012, Affidavit[s] of Non-Service" were filed for John Does II and V.  It appears from the record before this Court that Stephens never had service perfected on John Does II and V.  *See Shapiro v. Brown*, 979 S.W.2d 526, 528 (Mo.App. E.D. 1998) (holding "[s]ervice of process is a prerequisite to jurisdiction over either the person or property of the defendant.  Absent a general appearance or other waiver of process by the defendant, there must be service of process in an authorized manner in order for the court to acquire jurisdiction to determine the rights and liabilities of the defendant.") (internal citation omitted).

The motion court advised counsel by letter dated November 9, 2012, that the court could rule on the various motions to dismiss and/or quash service, or could conduct a hearing if any party wanted to present argument. Thereafter, on December 18, 2012, a telephone hearing was conducted by the motion court on the motions to dismiss filed by Sheriff Dunn, Sheriff Merritt, and Wells, as well as the motion to dismiss or alternative motion to quash service filed by Does I, III, and IV. This hearing took place almost three years after Stephens filed the petition in this matter. During this three-year period, Stephens did not conduct any discovery of her own, nor were depositions taken.[7]

On January 2, 2013, the motion court's "Order" (signed December 28, 2012) was filed sustaining the motions to dismiss filed by Sheriff Dunn, Sheriff Merritt, and Wells, "by virtue of the bar of sovereign immunity" in their official capacities and in their individual capacities. As to the motion to dismiss or alternative motion to quash service filed by Does I, III, and IV, the motion court sustained that as well "due to failure of personal service on said fictitious Defendants." The motion court ordered that "the Defendants, and each of them, are dismissed from this action, and [Stephens] take nothing on her claims against each of said Defendants."

On March 1, 2013, the motion court's Judgment was filed (signed February 26, 2013), pursuant to its December 28, 2012 Order sustaining Sheriff Dunn, Sheriff Merritt, and Wells' respective motions to dismiss, and Does I, III, and IV's Motion to Dismiss or, in the Alternative, to Quash Purported Service of Process. The Judgment specified that it was final for purposes of appeal pursuant to Rule 74.01(b)[8] "as there is no just reason for delay." This appeal followed.

---

[7] Unlike Stephens, Sheriff Dunn, Sheriff Merritt, and Wells served Stephens with interrogatories and request for production of documents directed toward Stephens. Stephens was first served with these discovery requests on May 1, 2012, and again on May 7, 2012. Stephens filed answers and objections to these discovery requests, but did not file similar discovery requests directed towards Sheriff Dunn, Sheriff Merritt, Wells, or any other defendant.

[8] All rule references are to Missouri Court Rules (2013).

Stephens contends the motion court erred in granting the motions to dismiss of Sheriff Dunn, Sheriff Merritt and Wells on the basis of official immunity "because it is not clear from [Stephens'] petition that these individual defendants were performing discretionary duties that would entitle them to the application of official immunity." Stephens further argues the motion court erred in granting Does I, III, and IV's motion to dismiss or alternative motion to quash service because Stephens' petition sufficiently identified the John Doe parties.

Respondents argue the motion court did not err in granting the motions to dismiss because Stephens failed to plead the existence of a statutory or mandated duty, and the breach of any such statutory or mandated duty would bar the doctrine of official immunity. Does I, III, and IV maintain the motion court did not err in granting their motion to dismiss because Stephens did not properly identify or serve the John Does after thirty-three months.

The issues for our determination are whether the motion court erred:

1.　In granting the motions to dismiss of Sheriff Dunn, Sheriff Merritt, and Wells for failure to state a claim on the basis of official immunity?

2.　In granting the motion to dismiss or alternative motion to quash purported service of process of Does I, III, and IV because of Stephens' failure to personally serve these John Does?

**Standard of Review**

We review dismissals for failure to state a claim *de novo*. ***Hess v. Chase Manhattan Bank, USA, N.A.***, 220 S.W.3d 758, 768 (Mo. banc 2007). "'A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom.'" ***Bosch v. St. Louis Healthcare Network***, 41 S.W.3d 462, 464 (Mo. banc 2001) (quoting ***Nazeri v. Missouri Valley College***, 860 S.W.2d 303, 306 (Mo. banc 1993)). We do not evaluate the merits of the case, but rather our review is limited to the contents of Stephens'

7

petition. ***Richardson v. City of St. Louis***, 293 S.W.3d 133, 136 (Mo.App. E.D. 2009). "We review the facts alleged in the Petition, without any weighing of credibility or persuasiveness, to determine if they meet the elements of *any* recognized cause of action." ***Vaughn v. Genasci***, 323 S.W.3d 454, 456 (Mo.App. E.D. 2010) (emphasis in original).

## Analysis

### Point I - Dismissal of Sheriff Dunn, Sheriff Merritt, and Wells[9] Not Erroneous

Here, the motion court sustained the motions to dismiss of Sheriff Dunn, Sheriff Merritt, and Wells for failure to state a claim "by virtue of the bar by sovereign immunity of [each Respondent] in [their] official capacity and . . . in [their] individual capacity." On appeal, Stephens argues her claims for wrongful death of decedent are not barred by official immunity.[10] However, Stephens' argument misconstrues the actual issue before this Court. The actual question presented to the motion court, and in this appeal, is whether the facts alleged in Stephens' petition meet the elements of a recognized cause of action for a finding that Stephens' petition states a claim on which relief can be granted.

This case involves tort claims against public entity employees. Because "finding a municipality liable for torts is the exception to the general rule of sovereign immunity, a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity." ***Topps v. City of Country Club Hills***, 272 S.W.3d 409, 415 (Mo.App. E.D. 2008) (internal quotation and citation omitted). While Missouri courts have found sovereign immunity and official immunity are "distinct legal concepts," ***Lynn v. T.I.M.E.-D.C., Inc.***, 710 S.W.2d 359, 360 (Mo.App. E.D. 1986), the Supreme Court of Missouri specifically held "'[i]mmunity'

---

[9] Collectively referred to in Point I as "Respondents."

[10] Stephens' brief is full of argument that her claims are not barred by official immunity. In fact, Stephens' brief contains a heading alleging "Defendants/Respondents Dunn, Merritt, and Wells are not shielded by Official Immunity." (Emphasis in original).

8

connotes not only immunity from judgment but also immunity from suit." ***State ex rel. Missouri Dept. of Agriculture v. McHenry***, 687 S.W.2d 178, 181 (Mo. banc 1985).

"Official immunity" is a "judicially-created doctrine [that] protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." ***Southers v. City of Farmington***, 263 S.W.3d 603, 610 (Mo. banc 2008).[11] The Supreme Court of Missouri discussed "official immunity" and its application in ***Southers*** stating:

> Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability.
>
> A finding that a public employee is entitled to official immunity does not preclude a finding that he or she committed a negligent act-because [sic] official immunity does not deny the existence of the tort of negligence, but instead provides that an officer will not be liable for damages caused by his negligence. Because the defense of official immunity is personal to a public employee, it cannot extend to protect his employing government entity sued under the doctrine of *respondeat superior*. A government employer may still be liable for the actions of its employee even if the employee is entitled to official immunity because the doctrine protects the employee from liability, but it does not erase the existence of the underlying 'tortious conduct' for which the government employer can be derivatively liable.

263 S.W.3d at 611 (internal citations omitted) (italics in original).[12]

Official immunity does not apply to discretionary acts done in bad faith or with malice. ***Davis v. Bd. of Educ. of the City of St. Louis***, 963 S.W.2d 679, 688-89 (Mo.App. E.D. 1998). "Bad faith or malice in this context ordinarily contains a requirement of actual intent to cause

---

[11] Under section 537.600.1, RSMo Cum.Supp. (2005), "public entities" are cloaked with sovereign immunity unless a statutory exception applies.

[12] The general rule of official immunity is that "'public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity.'" ***Adolf***, 706 S.W.2d at 444 (quoting ***Kanagawa v. State ex rel. Freeman***, 685 S.W.2d 831, 835 (Mo. banc 1985)).

injury." *Id.* at 689 (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)).

An official *may* also be held liable when performing "ministerial duties." *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985). "A ministerial function . . . is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Southers*, 263 S.W.3d at 610 (quoting *Kanagawa*, 685 S.W.2d at 836). Before a public official may be liable in tort for official acts, the public official or employee must breach a ministerial duty imposed by statute or regulation. *Boever v. Special School Dist. of St. Louis County*, 296 S.W.3d 487, 492 (Mo.App. E.D. 2009). The statute or regulation prescribing a ministerial duty must be mandatory and not merely directory, and must mandate "a ministerial, not a discretionary, action." *Id.*

Stephens correctly argued that this Court generally must construe all reasonable inferences in favor of plaintiff on an appeal granting a motion to dismiss. *Bosch*, 41 S.W.3d at 464. However, in cases alleging tort against a government employee, the Missouri Supreme Court has further declared that absent allegations that a government employee violated "either a statutory or departmentally-mandated duty," a plaintiff's petition is "insufficient to state a claim which is not barred by the doctrine of official immunity as a matter of law." *Adolf*, 706 S.W.2d at 445; *Boever*, 296 S.W.3d at 492; *see also Vaughn*, 323 S.W.3d at 456 (holding for a petition alleging government employee liability to survive a motion to dismiss for failure to state a claim, "the plaintiff must plead specific facts demonstrating that the employee failed to perform a statutory or departmentally-mandated duty or that the employee performed a discretionary duty

10

with bad faith or malice."). Stephens admits *Adolf* has not been overruled. Just a year prior to the *Adolf* opinion, the Supreme Court of Missouri held it is "appropriate to require a litigant who sues the state or its officers to file a petition demonstrating a viable theory of liability." *McHenry*, 687 S.W.2d at 181.

Under the record before this Court, Stephens did not allege the existence or breach of any statutory or regulatory duty and, therefore, did not allege facts establishing an exception to the official immunity doctrine. First, Stephens fails to cite any statute in the petition providing a statutorily required duty to be performed by Sheriff Dunn, Sheriff Merritt, and Wells, *see Brummitt v. Springer*, 918 S.W.2d 909, 912-13 (Mo.App. S.D. 1996), nor does Stephens aver a breach of a statutory or departmentally-mandated obligation, either ministerial *or* discretionary. *See Adolf*, 706 S.W.2d at 446. Rather, Stephens vaguely alleges Respondents were "responsible for the safety of inmates" with no mention of a statutory or departmental obligation for such responsibility. The Missouri Supreme Court has stated that absent the allegation of either a statutory or departmentally-mandated duty and breach of such duty, a plaintiff's pleadings are insufficient to state a claim as a matter of law. *Id.* at 445.

The only attempt to assert an exception to immunity invoked by Stephens' petition was a conclusory statement that "Defendants and each of them, demonstrated evidence of gross negligence, willful misconduct, *bad faith, and malice* toward [decedent] by not providing continuous observations of the decedent[.]" (Emphasis added). Courts have held that official immunity applies generally to all discretionary acts except those done in bad faith or with malice.

*Id.* at 446. After reviewing case law in other states, the Missouri Supreme Court noted bad faith or malice requires "actual intent to cause injury," "intentional doing of a wrongful act without legal justification or excuse," and "done knowingly and deliberately, for an improper motive[.]" *Id.* at 447.

Stephens' petition contains no allegation of intent to cause harm to decedent, nor does the petition state facts from which it could be inferred Respondents acted in bad faith or from improper or wrongful motive. Stephens' bare conclusory allegation of bad faith and malice, without specific facts evidencing that Respondents knew of decedent's prior history of attempts to commit suicide, or that Respondents disobeyed directions to take special precautions regarding decedent, is not sufficient to state a claim which is not barred by sovereign immunity. *See Western Robidoux Printing & Lithographing Co., Inc. v. Missouri State Hwy. Comm'n*, 498 S.W.2d 745, 749 (Mo. 1973) (holding "[b]are allegations of 'bad faith' are conclusions which are not to be considered in determining whether a plaintiff has stated a cause of action.").

Stephens argues Respondents "have the burden of demonstrating that the bar of official immunity applies to [Stephens'] petition." Stephens' statement confuses the parties' burdens as the Missouri Supreme Court is clear the burden is on the plaintiff to allege facts establishing that an exception to the official immunity doctrine applies. This requires the plaintiff to allege the existence of a statutory or departmentally-mandated duty and breach of that duty to survive a motion to dismiss for failure to state a claim. *Adolf*, 706 S.W.2d at 445. Simply put, a plaintiff must plead facts establishing an exception to official immunity, including the existence of a

12

statutory or departmentally-mandated duty, to survive a motion to dismiss for failure to state a claim.[13]

Finally, Stephens argues "the lack of an opportunity to conduct discovery in this matter has rendered [Stephens] unable to determine whether there are any policies that are applicable," and at "a bare minimum, reversal is mandated to determine the applicability of official immunity through the discovery process." To appropriately respond to this argument, we reviewed the docket entries and documents filed in this case and prepared the following timeline relevant to Stephens' lack of prosecution of this case:

| | |
|---|---|
| March 9, 2010 | Petition filed by Stephens. Letter to the clerk for filing states "[u]pon receipt of the file-stamped copy of the Petition, plaintiff's counsel will issue proper request for issuance of summons." |
| July 20, 2011 | Notice of Dismissal. Case was placed on Dismissal Docket for failure to prosecute. |
| August 11, 2011 | Letter to clerk from Stephens' counsel with five copies of the petition and requesting summonses be prepared for "each defendant." It appears this is the first request by Stephens' counsel that summonses be prepared. |
| August 12, 2011 | Summonses issued for Sherriff Dunn, Sherriff Merritt, Wells, Tuck, and Freitas. |
| August 18, 2011 | Case removed from dismissal docket. |

---

[13] Stephens reliance on ***Nguyen v. Grain Valley R-5 School District***, 353 S.W.3d 725 (Mo.App. W.D. 2011), for her position that "Missouri law does not require [Stephens] to specifically plead the existence or breach of a statutory duty[]" is sorely misplaced. The facts and procedural history in ***Nguyen*** are strikingly different from this case. Unlike this case, in ***Nguyen***, evidence was presented and considered by the trial court, and the trial court treated the motion to dismiss as a motion for summary judgment. ***Id.*** at 729. In addition, the ***Nguyen*** court specifically held the sole issue was "whether the Respondents established through undisputed facts that the alleged negligence occurred while they were performing discretionary acts." ***Id.*** at 731. Finally, ***Nguyen*** did not specifically hold that a plaintiff is not required to plead the existence and breach of a statutory or departmentally-mandated duty as implied by Stephens. Rather, ***Nguyen*** found that a "departmentally-mandated duty" may arise from sources other than statutes or regulations such as "departmental rules, the orders of a superior, or the nature of the position[s.]" ***Id.*** at 730. This finding did not eliminate a plaintiff's requirement to allege a duty *from some source*, including statutorily or departmentally-mandated, departmental rules, or orders from a superior, and breach of that duty, in order to state a claim which is not barred by official immunity.

August 26, 2011      Service on Sheriff Dunn.

August 27, 2011      Service on Sheriff Merritt.

September 16, 2011      Sheriff Dunn files Motion to Dismiss and suggestions in support.

September 22, 2011      Sheriff Merritt files Motion to Dismiss and suggestions in support.

October 21, 2011      Stephens files Suggestions in Opposition to Sheriff Dunn's Motion to Dismiss.

November 10, 2011      Stephens files Suggestions in Opposition to Sheriff Merritt's Motion to Dismiss.

November 28, 2011      Letter to clerk from Stephens' counsel requesting "alias summonses" be prepared for Wells, John Does I-V, and Tuck. This appears to be Stephens' first request that summonses be prepared for the John Does.

December 9, 2011      Summonses issued for Wells, John Does I-V, and Tuck.

January 19, 2012      Wells files Motion to Dismiss and suggestions in support.

January 26, 2012      Motion to Dismiss or in the Alternative, to Quash Purported Service of Process and suggestions filed on behalf of John Does I, III, and IV.

February 21, 2012 & February 28, 2012      Stephens files suggestions in opposition to remaining motions to dismiss.

April 20, 2012      John Does file Notice of Hearing.

April 27, 2012      Sheriff Dunn files First Interrogatories and First Request for Production of Documents to Stephens.

May 7, 2012      Wells and Sheriff Merritt file First Set of Interrogatories and First Request for Production of Documents to Stephens.

July 13, 2012      Stephens files answers and objections to the written discovery propounded to her by Sheriff Dunn, Sheriff Merritt, and Wells.

November 9, 2012      Letter from Judge Bickel informing counsel he can rule on the various motions pending, or schedule a hearing on the motions if parties requested a hearing.

December 18, 2012      Telephone hearing held on motions to dismiss.

14

| December 28, 2012 | Order sustaining Respondents' motions to dismiss and Does I, III, and IV's motion to dismiss, or in the alternative, motion to quash. |

Any "lack of opportunity to conduct discovery" is solely due to Stephens' admitted choice not to attempt discovery. Nearly seventeen months after Stephens' petition was filed, Respondents still had not been served with process, and it appears Stephens had not even requested the clerk prepare summonses for service.[14] Stephens waited until her case was placed on the dismissal docket to request the clerk prepare summonses for service upon all Respondents. Even after obtaining service on Sheriff Dunn, Sheriff Merritt, Wells, and Does I, III, and IV, Stephens took no steps to prosecute her case.

Stephens' complaint of "lack of opportunity to conduct discovery" is made even more egregious by *her own* failure to propound discovery upon Respondents after they filed the multiple motions to dismiss. She had nearly fifteen months from the time the first motion to dismiss was filed until a hearing was held. There is no indication in the record or factual claim made by Stephens, evidencing some hindrance to her filing discovery. In fact, the opposite is true as Sheriff Dunn, Sheriff Merritt, and Wells propounded discovery to Stephens, and she filed her objections and answers during this time. Even when these Respondents propounded discovery to Stephens, she did not propound one interrogatory or request for production of documents to any of these Respondents.

---

[14] This finding is not meant to imply that a plaintiff must request the clerk prepare a summons. Rule 54.01(a) provides "[u]pon the filing of a pleading requiring service of process, the clerk shall forthwith issue the required summons or other process." *See* **Continental Elec. Co. v. Ebco, Inc.**, 375 S.W.2d 134, 137 (Mo. 1964) (finding "[t]he original summons is to be issued by the clerk forthwith upon the filing of the petition."). Here, however, when Stephens filed her lawsuit, her counsel specifically directed the clerk by letter that "[u]pon receipt of the file-stamped copy of the Petition, *plaintiff's counsel will issue proper request for issuance of summons*." (Emphasis added). Stephens later claimed in her motion to remove the case from the dismissal docket that "there was an oversight by one of the paralegals in plaintiff [sic] counsel's office, and there was no request to the clerk's office for an issuance of the summons in this case."

In light of her failure to conduct any discovery from March 9, 2010, until December 19, 2012, we are at a loss as to how Stephens can now complain of a "lack of an opportunity to conduct discovery in this matter." Stephens clearly had an "opportunity to conduct discovery" and plenty of time to do so.

Stephens' argument that "reversal is mandated to determine the applicability of official immunity through the discovery process" is also flawed. While it is true that the "determination of whether an act is discretionary or ministerial is made on a case-by-case basis," *Southers*, 263 S.W.3d at 610, this does not nullify a plaintiff's burden to allege that the defendant public official violated "either a statutory or departmentally-mandated duty" in order to state a claim which is not barred by the doctrine of official immunity as a matter of law. *Adolf*, 706 S.W.2d at 445. The issue of whether the "act" of the public employee is ministerial or discretionary; i.e., whether official immunity protects the public employee, is not an issue to be reached if there is no allegation in plaintiff's petition that a duty has been imposed upon the public employee by statute or regulation, or any other obligation.

After review of Stephens' petition, we find the motion court did not err in granting the motions to dismiss of Sheriff Dunn, Sheriff Merritt, and Wells for failure to state a claim on the basis of official immunity. Stephens' petition fails to plead specific facts showing these Respondents had a statutory or departmentally-mandated duty, failed to perform such a duty, or that these Respondents performed a discretionary duty with bad faith or malice. Point I is denied.

### Point II - Dismissal of Does I, III, and IV Not Erroneous

The motion court sustained the motion to dismiss filed by Does I, III, and IV "due to failure of personal service on said fictitious Defendants." For her second point, Stephens claims

16

the trial court erred in granting Does I, III, and IV's motion to dismiss "because it is not disputed that [Stephens'] petition sufficiently identifies the John Doe parties intended."  Stephens argues there is no law "requiring proper service on a John Doe Defendant."  Does I, III, and IV argue "[t]he John Does were never properly identified or served by [Stephens], therefore the [motion] court's dismissal was proper."

Rule 54.01(c) requires that a summons and copy of the pleading shall be "promptly" served.  Missouri law requires a plaintiff to exercise due diligence in obtaining service upon defendants.  *See* **Daniels v. Schierding**, 650 S.W.2d 337, 339 (Mo.App. E.D. 1983).  Here, when Stephens filed her lawsuit, her counsel specifically directed the clerk by letter that "[u]pon receipt of the file-stamped copy of the Petition, *plaintiff's counsel will issue proper request for issuance of summons*."  (Emphasis added).  Stephens' counsel did not request issuance of any summons until August 11, 2011, seventeen months after her petition was filed.  However, that request only included five copies of the petition, and summonses were only issued to Sheriff Dunn, Sherriff Merritt, Wells, Tuck, and Freitas.  Stephens then requested an alias summons for the John Does, three-and-a-half months later on November 28, 2011, *and more than twenty months since the Petition was filed*.

"The question of whether due diligence has been exerted is to be decided on a case by case basis[.]"  **Atkinson v. Be-Mac Transport, Inc.**, 595 S.W.2d 26, 28 (Mo.App. E.D. 1980).  Delay in the request for a summons is only one factor to be considered in making a determination on due diligence.  *Id.*  Here, there was clearly a delay of more than twenty months in specifically requesting summonses for Does I, III, and IV.  During the twenty-month time period from filing suit to requesting summonses for the John Does, Stephens did not attempt to

17

serve any written discovery or conduct any depositions to discover the names of the alleged John Does.

Furthermore, "[w]hen the requirements for manner of service are not met, a court lacks power to adjudicate." *State ex rel. Plaster v. Pinnell*, 831 S.W.2d 949, 951 (Mo.App. S.D. 1992). Rule 54.13(b)(1) provides personal service upon an individual shall be made

> by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of fifteen years, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process.

Does I, III, and IV were not served personally, nor was a copy of the summons and petition left at their dwelling with a person of their family over the age of fifteen years. Rather, a summons and petition was left with "Sgt Mauller, Badge #510" at the Jasper County Jail in an attempt to serve Does I, III, and IV. However, there has been no showing that "Sgt Mauller" is an "agent authorized by appointment or law to receive service of process" on behalf of Does I, III, and IV as required by Rule 54.13(b).

Stephens argues the service upon Sergeant Mauller was "the only notice she could give under the circumstances of having filed her lawsuit on March 9, 2010, the day before the statute of limitations expired." We disagree. Does I, III, and IV were alleged to be employees of either the Jasper County Jail or Jasper County with their work being related to inmates at the Jasper County Jail. Stephens sued Sheriff Dunn as "the Sheriff of Jasper County . . . responsible for the safety of inmates in the Jasper County Jail[.]" Sheriff Dunn was served with a summons and petition in August 2011, yet Stephens failed to conduct any discovery, written or by deposition, directed towards Sherriff Dunn to discover the names of Jasper County employees Does I, III, and IV.

18

Stephens attempts to compare the dismissal of Does I, III, and IV in this case to cases where the issue was whether the plaintiff adequately identified the John Does and/or conduct of the John Does to give notice to the person plaintiff intended to sue but could not identify, such that it relates back to the filing date when the individual's name is discovered. *See **State of Missouri ex rel. Holzum v. The Honorable Nancy L. Schneider***, 342 S.W.3d 313 (Mo. banc 2011); ***Schultz by Schultz v. Romanace***, 906 S.W.2d 393 (Mo.App. S.D. 1995); and ***Smith v. Lewis***, 669 S.W.2d 558 (Mo.App. W.D. 1983), cited by Stephens. However, that is not the issue in this case. Stephens made no attempt to discover the identity of the John Does mentioned in her petition over a two-and-a-half-year time period. Instead, Stephens attempts to subvert her failures by alleging she attempted to serve "promptly" by leaving a copy of the summonses and petitions with Sergeant Mauller of the Jasper County Sheriff's Department. Rule 55.27(a)(2)&(5); ***Worley v. Worley***, 19 S.W.3d 127, 129 (Mo. banc 2000).

Service of process must be made in the manner prescribed in our statutes and rules—this was not done in this case. ***Worley***, 19 S.W.3d at 129. For this reason, the motion court did not err in granting the motion to dismiss, or in the alternative, to quash purported service of process of Does I, III, and IV because of Stephens' failure to personally serve these Respondents. Point II is denied.

Accordingly, the Judgment of the motion court is affirmed.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs

19