

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

JOHN CARLTON,            )    No. ED111694

                               )

     Appellant,          )    Appeal from the Circuit Court

                               )    of St. Louis County

vs.                          )

                               )    Honorable Dean P. Waldemer

BRANDON MEANS,       )

                               )

     Respondent.        )    FILED: January 30, 2024

This case arises from a vehicular collision between John Carlton and Officer Brandon Means of the City of St. Ann Police Department, who was responding to an emergency call from another officer at the time. The trial court entered summary judgment in favor of Officer Means as to Carlton's claim for personal injuries, concluding that Officer Means was entitled to official immunity. The question presented in this appeal is whether the malice exception to the doctrine of official immunity applies. Because there are no facts demonstrating that Officer Means acted with malice, we affirm the trial court's entry of summary judgment in his favor.

## Factual and Procedural Background

On September 10, 2019, Officer Means was on duty in his department vehicle when he heard a radio call from another officer requesting assistance with a traffic stop. As Officer Means drove to the scene, he heard the other officer "call out urgently over the police dispatch radio that the vehicle he stopped backed into his vehicle and that he was in pursuit." Officer Means activated

his emergency lights and sirens and increased his speed as he drove toward the other officer's location to assist, heading south on Adie Road. The speed limit on Adie Road, a two-lane road, was 30 miles per hour as posted and 20 miles per hour by ordinance. At times, Officer Means's vehicle went into the northbound traffic lane as he passed cars that had pulled to the side of the road. Officer Means accelerated past a stop sign at the intersection of Adie Road and Old St. Charles Road at a time when other vehicles were in and around the intersection. Based on "black box" data, Carlton's experts opined that Officer Means accelerated from 86 to 87 miles per hour with the gas pedal 99.9 percent engaged as he went through the intersection.

Carlton was also driving south on Adie Road past its intersection with Old St. Charles Road. Unaware that Officer Means's vehicle was approaching from behind, Carlton attempted to make a left turn onto a cross street. When Officer Means saw Carlton's vehicle start to make the turn, he applied his brakes[1] and turned the steering wheel to the left in an attempt to avoid a collision, but his vehicle struck Carlton's, and both men were injured. Officer Means's vehicle was traveling 87 miles per hour just before impact and at least 74 miles per hour at the moment of impact.

Carlton filed a petition against Officer Means alleging that he was negligent or, alternatively, that he violated an ordinance or acted with malice. Carlton also asserted a vicarious liability claim against Officer Means's employer, the City of St. Ann, for the acts alleged in each of the claims against Officer Means. Relying on the doctrine of official immunity, Officer Means filed a motion for summary judgment, asserting that he was entitled to judgment as a matter of law because he was performing a discretionary act within the course of official duties without malice.

---

[1] The parties disagree as to exactly how much time elapsed between the time Officer Means noticed Carlton's vehicle and when he applied his brakes. But whether it was a "split second," as Officer Means stated, or somewhere between 1.5 and 2 seconds, as Carlton's expert opined, is neither "material" to the issue of malice nor a "genuine" dispute that would preclude summary judgment.

2

Officer Means attested that he "did not intend for his vehicle to collide" with Carlton's vehicle and "did not intend for anyone to be injured in any way." In response, Carlton admitted that Officer Means tried to avoid the collision and did not intend for it to happen. He nevertheless claimed that Officer Means acted with malice, relying on expert testimony that the officer's speed was such that "no matter what happened in front of him in close proximity, he would not be able to do anything to be able to avoid it." Carlton also cited another expert's opinion that Officer Means's actions "showed an absolute disregard, reckless disregard for" himself and others and that his conduct "was so far out of the realm of reasonable actions and training that is taught or even an acceptable culture amongst law enforcement to do that." That expert described Officer Means's actions as "off the charts irresponsible and reckless."

The trial court entered summary judgment in favor of Officer Means, finding that he was "a public official, working in the scope of his employment, performing a function that was not ministerial[] and that he performed those duties without malice." Although Carlton's claim against the City of St. Ann remained pending, the trial court concluded that the summary judgment in favor of Officer Means resolved a "judicial unit" of claims. The trial court determined there was no just reason for delay and certified the judgment for appeal under Rule 74.01(b) (2023).

## Standard of Review

We review a summary judgment de novo. *Southers v. City of Farmington*, 263 S.W.3d 603, 608 (Mo. banc 2008). We view the record in the light most favorable to the non-moving party against whom judgment was entered. *Id.* Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.*

3

**Discussion**

Official immunity shields a public official from personal liability for alleged negligence resulting from the performance of a discretionary act when the act occurred within the course of official duties and was done without malice. *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019). The purpose of the official immunity doctrine is "to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability." *Id.* (internal quotation marks, alterations and citation omitted). "[I]f an officer is to be put in fear of financial loss at every exercise of his official functions, [then] the interest of the public will inevitably suffer." *Id.* at 190-91 (internal quotation marks, alterations and citation omitted). The Supreme Court of Missouri recently reiterated the compelling public interest at the heart of the official immunity doctrine:

> Indeed, courts and legal commentators have long agreed that society's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business. Courts applying the doctrine of official immunity must be cautious not to construe it too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation.

*State ex rel. Barron v. Beger*, 655 S.W.3d 356, 360 (Mo. banc 2022) (per curiam) (internal quotation marks and citations omitted).

Every time official immunity has been raised in a case involving the discretionary act of responding to an emergency—either while in pursuit of a suspect or traveling to an emergency situation—Missouri courts have, without exception, found that the public official was entitled to the protection of that doctrine. *See id.* at 361; *Southers*, 263 S.W.3d at 618-19; *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006); *Moore v. City of O'Fallon*, 2023 WL 8721735, at *5-7 (Mo. App. E.D. December 19, 2023); *Throneberry v. Missouri State*

4

*Highway Patrol*, 526 S.W.3d 198, 204 (Mo. App. W.D. 2017); *Rhea v. Sapp*, 463 S.W.3d 370, 378-80 (Mo. App. W.D. 2015); *McCormack v. Douglas*, 328 S.W.3d 446, 450-51 (Mo. App. S.D. 2010); *Fonseca v. Collins*, 884 S.W.2d 63, 67 (Mo. App. W.D. 1994); *Bachmann v. Welby*, 860 S.W.2d 31, 34 (Mo. App. E.D. 1993). "Imposing liability upon the officer in these cases might delay responses to emergency calls, thereby adversely affecting officers or citizens in need of emergency assistance." *Davis*, 193 S.W.3d at 763. Responding to an emergency often involves driving above the speed limit without strict adherence to stop signs or other rules of the road. If faced with the prospect of personal civil liability, an officer may choose "to drive within the speed limit and stop at all stop signs[,]" which would have an adverse impact on the public's need for timely assistance in emergencies. *Bachmann*, 860 S.W.2d at 34.

For purposes of this appeal, there is no dispute that Officer Means was performing a discretionary act within the course of his official duties at the time of the collision with Carlton's vehicle because he was responding to another officer's emergency call for assistance. But even the discretionary acts of police officers will not be protected by official immunity if the conduct is "willfully wrong or done with malice or corruption." *Southers*, 263 S.W.3d at 610. Carlton's sole argument on appeal is that there was a genuine issue of fact regarding malice, precluding the entry of summary judgment based on official immunity. We disagree.

In the general context of official immunity—and specifically when a case involves the discretionary act of responding to an emergency—the definition of malice ordinarily requires "actual intent to cause injury." *Throneberry*, 526 S.W.3d at 204. The most oft-cited definition of malice in the official immunity context has two components:

> Malice exists where one wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.

*McCormack*, 328 S.W.3d at 450 (internal quotation marks and citation omitted). An act is "wanton" when it has a "wicked purpose, or when [it is] done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (internal quotation marks and citation omitted). The test for malice, then, is two-pronged: it requires both an *act* contrary to duty and done with a wicked purpose or in reckless disregard of others' rights (i.e., "wantonly") *and* an actual *intent* to injure or prejudice another.[2]

The malice exception has never been applied to remove the protection of official immunity in a case involving the discretionary act of responding to an emergency.[3] In fact, of the above cited cases involving emergency response scenarios, only *McCormack*, *Throneberry* and *Moore* even considered whether the malice exception applied. *See Southers*, 263 S.W.3d at 610 (noting the malice exception without further discussion); *Barron*, 655 S.W.3d at 361 (noting that plaintiff "made no allegation that [the officer] was acting with malice" without further discussion). In *McCormack*, a volunteer firefighter drove past a stop sign and collided with another vehicle, killing the driver. 328 S.W.3d at 448. The decedent's survivors argued the firefighter acted with malice.

---

[2] The origin of this definition of malice is *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443 (Mo. banc 1986), in which the Court found that the petition failed to state a wrongful death claim that was not barred by official immunity against the superintendent of a state mental health facility. *Id.* at 446. We note that the dispositive holding in *Twiehaus* was based on the plaintiff's failure to allege an existing duty on the defendant's part relating to the decedent's fatal jump from a facility window. *See id.* at 445-46. But the Court went on to discuss the malice exception in order to make unequivocally certain that issuing the writ of prohibition to dismiss the petition was proper. *See id.* at 447. The Court discussed the standards for showing malice in other jurisdictions, but never expressly adopted any of the definitions it discussed therein, noting only that it "appeared" the petition failed to sufficiently plead the malice exception under those definitions. *Id.*

Nevertheless, even if the discussion of malice in *Twiehaus* was arguably dicta, cases since then—both those with facts similar to this case, as cited in the body of this opinion, and others—have cited to and relied on the definitions discussed therein and there is no question those are the applicable standards in this case. In addition to the emergency response cases discussed in this opinion, *see also Alsup*, 588 S.W.3d at 190 n.7; *Gray-Ross v. St. Louis Pub. Schs.*, 643 S.W.3d 665, 670 n.1 (Mo. App. E.D. 2022); *Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo. App. S.D. 2014); *Conway v. St. Louis Cnty.*, 254 S.W.3d 159, 165 (Mo. App. E.D. 2008); *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 479-80 (Mo. App. W.D. 2005); *Davis v. Bd. of Educ. of City of St. Louis*, 963 S.W.2d 679, 689 (Mo. App. E.D. 1998); *Rozell v. Stiefermann*, 726 S.W.2d 342, 343-44 (Mo. App. W.D. 1987).

[3] Outside of this factual scenario, we have found only two cases in which the pleading or the record was sufficient to invoke the malice exception. *See Blue*, 170 S.W.3d at 479-80 (involving a false arrest claim); *Rozell*, 726 S.W.2d at 344 (involving a defamation claim).

*Id.* at 451. In affirming summary judgment in favor of the firefighter, the court stressed that there were no facts in the summary judgment record showing malice and that the firefighter's conduct was no more than "an act of negligence that was not willfully wrong while in the process of answering the emergency call." *Id.* The *McCormack* court did not hold that running a stop sign can never amount to malice, but concluded the facts did not support such a conclusion in that case. *Id.* at 451 n.4. The malice exception also did not apply in *Throneberry*, where a police officer pursued a suspect, who collided with another vehicle. 526 S.W.3d at 201-02. During the chase, which lasted for two minutes over approximately two miles, the suspect reached a top speed of 91 miles per hour. *Id.* The court concluded that, although the petition included a count for recklessness, it did not allege "acts or omissions implicating a malicious motive or purpose, or conscious wrongdoing suggesting an actual intent to cause injury" and, therefore, was not sufficient to invoke the malice exception. *Id.* at 202. The *Throneberry* court also found that "none of the controverted or uncontroverted facts framed by the summary judgment pleadings permitt[ed] an inference of bad faith or malice on [the officer's] part." *Id.* at 204-05. Finally, in *Moore*, the suspect was involved in an accident after the officer stopped pursuing him. 2023 WL 8721735, at *1-2. The court held that neither the plaintiff's recklessness count nor the summary judgment record contained "any facts supporting bad faith or malice" sufficient to trigger the exception. *Id.* at *7.

It is abundantly clear from this jurisprudence that reckless conduct alone does not amount to malice; there must also be evidence that the official had the intent to injure or prejudice the plaintiff. *See also Southers*, 263 S.W.3d at 610-11 n.8 (expressly distinguishing the malice exception in this state from other jurisdictions that provide exceptions from official immunity for "recklessness or gross negligence"); *see also, e.g.*, *Gray-Ross*, 643 S.W.3d at 670 n.1 (finding an

7

allegation that a public official "acted willfully and recklessly" with "a reckless indifference to and conscious disregard for the safety of others" did not sufficiently plead the malice exception because it did not include an allegation that the official "intended her action to be prejudicial or injurious").

Here, the summary judgment record does not show that Officer Means had the requisite intent to injure or prejudice Carlton. It is uncontested that Officer Means accelerated past a stop sign and was driving three to four times the speed limit. But it is also undisputed that Officer Means tried to avoid the collision and did not intend to crash into Carlton's vehicle. Officer Means attested that he did not intend to injure anyone. Although Carlton attempted to dispute that fact with expert testimony, those opinions showed, at the most, that Officer Means's *conduct* was reckless. Again, Carlton provided expert testimony that Officer Means's speed was such that he would have been unable to avoid a collision with anything that "happened in front of him in close proximity" and that his actions were "off the charts irresponsible and reckless." To be sure, that testimony might establish that Officer Means's conduct was "wanton" for purposes of the first prong of the malice test. *See McCormack*, 328 S.W.3d at 450. But the intent prong of the malice test is another matter.

Carlton suggests he can show the requisite intent because Officer Means's conduct was *so* reckless and was *so* willfully in disregard of another's rights that a trier of fact could infer he had an improper or wrongful motive.[4] No Missouri cases have found malice based on an inference of

---

[4] This proposition also originated in *Twiehaus*, where the Court stated that it was "arguable" a court may need to determine if the allegations of a pleading give rise to an inference of malice and observed that *Sanders v. Daniel Int'l Corp.,* 682 S.W.2d 803, 808 (Mo. banc 1984)—a case discussing definitions of malice in the malicious prosecution context—"noted that some courts would include within 'malice' conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive." *See* 706 S.W.2d at 447 (internal quotation marks omitted). But, again, the *Twiehaus* Court did not adopt that as part of the malice definition; it merely stated that "[a]*ssuming* this to be the relevant standard, the allegations in plaintiffs' petition nevertheless fail to state facts from which it could reasonably be inferred that relator acted in bad faith or from an improper or wrongful motive." *Id.* at 447-48 (emphasis added).

intent drawn solely from the recklessness of an officer's conduct in responding to an emergency. *Throneberry* and *Moore*, however, noted the *lack* of any facts giving rise to such an inference, which suggests the possibility that such an inference could be drawn in appropriate circumstances.[5] But no such inference can be drawn from the facts or opinions in this case, even when viewed in the light most favorable to Carlton. In the context of responding to this emergency, Officer Means's act of driving over the speed limit and past a stop sign—even if reckless—did not show an intent to injure anyone, only an intent to get to the officer in need as quickly as possible. If expert opinions suggesting that such conduct is reckless were alone sufficient to demonstrate intent to harm in this situation—particularly given the officer's undisputed statement that he had no such intent—then the two-pronged malice definition would be effectively reduced to a requirement of reckless conduct. If that were the sole test of malice, then the exception would virtually swallow the rule in this type of case because the need to quickly respond to an emergency often necessitates driving over the speed limit without strict adherence to stop signs or other rules of the road. Moreover, applying the malice exception here would be directly contrary to the public policy behind the official immunity doctrine in cases involving police officers who are responding to emergencies and to the directive from the Supreme Court of Missouri that courts should avoid applying the doctrine too narrowly. *See Barron*, 655 S.W.3d at 360-61; *Davis*, 193 S.W.3d at 763; *Bachmann*, 860 S.W.2d at 34. The trial court properly entered summary judgment in favor of Officer Means.

---

[5] *See Throneberry*, 526 S.W.3d at 205 ("Simply put, there are no facts alleged from which it could reasonably be inferred that [the officer] acted in bad faith or from an improper or wrongful motive." (internal quotation marks and citation omitted)); *Moore*, 2023 WL 8721735, at *7 n.5 (finding allegation that conduct rose "to the level of willfully wrong or done with malice or corruption" contained no facts from which it could reasonably be inferred that the officer acted from an improper or wrongful motive); *see also, e.g.*, *Stephens*, 453 S.W.3d at 251 (finding petition did not invoke malice exception because it did not allege jail employees had intent to cause harm nor any facts from which it could be inferred that they acted from a "improper or wrongful motive" in inmate's suicide).

**Conclusion**

For the foregoing reasons, the judgment is affirmed.

_____
MICHAEL E. GARDNER, Judge

Kurt S. Odenwald, P.J., concurs.
Renée D. Hardin-Tammons, J., concurs.